UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

DOCKET FILE: CV _3:16cv 407(JAM)_

FILED

2016 MAR 10 ☐ 1: 08

US DISTRICT COURT
BRIDGEPORT CT

**PLAINTIFF**

Michael J. Nowacki

**DEFENDANTS**

The Town of New Canaan, Connecticut

The State of Connecticut

Kevin Casey

James Cole

William Ferri

Joseph Farenga

Pamela Flynn

Louis Gannon

Christian Gray

Daniel Gulino

Leon Krolikowski

Robert E. Mallozzi III

Edward Nadriczny

Thomas Swindon

March 10, 2016

VERIFIED

COMPLAINT

## I.    Introduction

1.  Since October 1992, the Plaintiff has continuously been a resident of New Canaan, Connecticut and is taxpayer of the State of Connecticut, and intends to maintain a primary residence in the State of Connecticut during the pendency of this cause of action.

2.  This complaint alleges the decision of the Appellate Court of the State of Connecticut issued officially as AC 34577 (Exhibit 1) State of Connecticut v. Michael Nowacki on March 10, 2015 provides a cause of action for the claims for punitive and compensatory damages defined in this verified complaint for false arrest and malicious prosecution pursued by the defendants as employees of the New Canaan Police Department between November 2009 and the dismissal of all litigation on May 6, 2015.

3.  The State of Connecticut filed no certification for review by March 30, 2015 of the Appellate Court decision officially released on March 10, 2015.

4.  This complaint alleges abridgements by the defendants as detailed in this complaint, individually and severally, of rights of the Plaintiff to be protected from false arrest, imprisonment based upon non-lawful authority, through malicious prosecution.

5.  The defendants named as "actors" in the State of Connecticut and employees of the New Canaan Police Department, as detailed in this pleading, individually and

2

severally, as detailed in this pleading, engaged in conduct which abridged rights of the plaintiff preserved by the First, Fourth, Sixth, Eighth, Ninth Amendments to the Constitution of the United States pursuant to the application of 18 U.S.C. § § 1983, 1985 (c), 1986 and the due process and equal protection clauses of the Fourteenth Amendment of the Constitution of the United States as applied to liability claims for damages for the conduct of employees in a municipality.

6.  This complaint also alleges the defendants, individually and severally, engaged in abridgments of rights of the plaintiff preserved by abridging the plaintiff's rights to terminate employee contracts as detailed in  18 U.S.C. §1981 when reviewed in the light the due process and equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

7.  This complaint, alleges the defendant, Robert E. Mallozzi, as the First Selectman in the Town of New Canaan, and his executive assistant Pamela Flynn,  in his campaign for re-election in 2015, abridged and obstructed the plaintiff's (and the electorate's rights of citizens in the Town of New Canaan) to access of First Amendment rights including the freedom of debate, freedom of assembly and the due process and equal protection rights as applied to 42 U.S.C. 1983, 1985 (c), 1986 and as applicale to the right to work of the plaintiff as a petitioning candidate for the public office of First Selectman of the Town of New Canaan.

## II.    <u>Jurisdiction and Venue</u>

8. Plaintiff submits that the U.S. District Court has jurisdiction of the review of this legal pleading pursuant to 28 U.S.C. §§ 1331, 1343 (3) and 1377 (a).

9. Plaintiff's residency in the Town of New Canaan, Connecticut provides jurisdiction of the United States District Court of Connecticut.

10. Plaintiff submits this statement from page 3 in Document 139, in 3:12-cv-01296 (JCH):

> "To succeed on his section 1983 claim, Nowacki must ultimately prove each of the elements of a malicious prosecution claim under the state law. **See Roberts v. Babkiewicz** 582 F.3d 418, 420 (2d Cir. 2009). Under Connecticut law, a plaintiff must show: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff' (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily other than that of bringing an offender to justice." **McHale v. W.B.S. Corp.**, 187 Conn. 444, 447 (1982).

11. The Town of New Canaan unsuccessfully challenged the federal court jurisdiction of the 42 U.S.C. 1983 claims in 3:12-cv-01296 (JCH) relating to "malicious prosecution" claims for "nolled" legal proceedings as noted in a decision rendered on December 30, 2013 by the Honorable Janet C. Hall.

12. The plaintiff seeks a ruling of original jurisdiction from the U.S. District Court on whether the issuance of a thirty year protective order (which was not addressed in the articulation of AC 34577) represents grounds for damages to be sought at trial for "cruel and unusual punishment" pursuant to the application of the Eighth Amendment of the Constitution of the United States.

13. The plaintiff acknowledges his intent to place his home in New Canaan on the real estate market on or about March 18, 2016.

4

14. The plaintiff intends to maintain his primary residence in Connecticut during the pendency of this matter but requests assignment of this case to the U.S. District Court in Bridgeport, inasmuch as the vast majority of the defendants have "public service" employment responsibilities in the Town of New Canaan.

15. The plaintiff acknowledges the defendant's reasonable rights to "access of attendance" of court proceedings but suggests that the public safety interests or economic burdens should to the community relating for "concerns for the public safety" by absence of "administrative authority " of the various employees of the Town of New Canaan and or "overtime" or "extra duty" assignment costs which would be paid by the community due to union contract provisions incurred from defendants (in their positions as public officials attending court proceedings, depositions or potential trial) of the plaintiff's claims set forth in this pleading for the punitive and compensatory damages sought in federal court for abridgements of fundamental Constitutional rights of the plaintiff captured in AC 34577.

## III.   Parties

**Plaintiff:**

16. Plaintiff asserts his rights for self-representation in this matter seeking punitive and compensatory damages as a Private Attorney General, as permissible in the application of 18 U.S.C. 1988.

**Defendants:**

5

17. State of Connecticut is named as defendant in its official capacity in this suit for equitable damages pursuant to the application of C.G.S. § 4-165. Upon the filing of this pleading, a copy of this legal filing will be sent to the Claims Commissioner and Attorney General office pursuant to Connecticut law when litigation is filed naming the State of Connecticut as a "defendant".

18. The Town of New Canaan is named as a defendant is this litigation as an incorporated municipality in Fairfield County, Connecticut engaging in the appointment, employment and training of New Canaan Police Department personnel-- ten of whom are named in this complaint for engaging in alleged various constitutional rights abridgments of the Plaintiff grounded in First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. §§ 1981 and 1983 including but not limited to false arrest and malicious prosecution.

19. Kevin Casey is named as a defendant in this litigation individually and in his official capacity as a public official as an employee of the Town of New Canaan in the New Canaan Police Department.

20. James Cole is named as a defendant in this litigation individually and in his official appointed capacity serving as Chairman of the Police Commission of the Town of New Canaan in 2010.

21. Joseph Farenga is named as a defendant in this litigation individually and in his official capacity as a public official as an employee of the Town of New Canaan in the New Canaan Police Department.

22. William Ferri is named as a defendant in this litigation individually and in his official capacity as a public official as an employee of the Town of New Canaan in the New Canaan Police Department.

23. Pamela Flynn is named as a defendant in this litigation individually and in her official capacity as a public official as an employee of the Town of New Canaan in the position of executive assistant to the First Selectman of the Town of New Canaan.

24. Dan Gulino is named as a defendant in this litigation individually and in his official capacity as a public official as an employee of the Town of New Canaan in the New Canaan Police Department.

25. Louis Gannon is named as a defendant in this litigation individually and in his official capacity as a public official as an employee of the Town of New Canaan in the New Canaan Police Department.

26. Christian Gray is named as a defendant in this litigation individually and in his official capacity as a public official as an employee of the Town of New Canaan in the New Canaan Police Department.

27. Leon Krolkowski is named as a defendant in this litigation individually and in his official capacity as a public official as an employee of the Town of New Canaan in the New Canaan Police Department

28. Robert E. Mallozzi is named as a defendant in this litigation individually and in his official capacity as a public official as an employee of the Town of New Canaan as First Selectman.

29. Edward Nadriczny is named as a defendant in this litigation individually and in his official capacity during the pendency of the trial of the plaintiff on four alleged "crimes" as the Chief of Police. Chief Nadriczny retired from his position as Chief of Police during the pendency of the issuance of AC 34577.

30. Thomas Swindon is named as a defendant in this litigation individually and in his official capacity as an employee of the Town of New Canaan in the New Canaan Police Department.

## IV.    Summary of Facts

31. In September 2009, Kaitlyn Waters interviewed for employment as a child care provider by both Suzanne Sullivan and Michael Nowacki, who at the time shared joint legal and physical custody until December 2, 2009 of their two minor children, T.N. born in 1994 and K.N. born in 1996.

32. In early October 2009, Kaitlyn Waters requested and was provided a "draft" of an employment agreement that outlined her duties as a child care provider which was signed by this plaintiff and Kaitlyn Waters with a handwritten notation placed by Kaitlyn Waters with an "effictive date" (sic) noted as 1/1/2010 and signed "Katie Waters" noted as October 19, 2009.

33. Kaitlyn Waters testified under oath at the plaintiff's (plaintiff in this pleading was the "defendant" in the case State of Connecticut v. Michael Nowacki) trial on January 10 and 11, 2012 in Norwalk, Connecticut Superior Court that she had input into the draft of the employment contract and adjustments were made based upon her input (and her father) prior to signing the employment agreement.

8

34. The employment agreement signed by "Michael J. Nowacki" and "Katie Waters" contained terms of service of a minimum of one year and required termination notice of "45 days" was embedded in the employment agreement by the employer and the employee, as noted in AC 34577.

35. Despite being provided the opportunity to sign the employment agreement with Kaitlyn Waters, Suzanne Sullivan refused to sign the employment agreement.

36. On the date of February 22, 2010, Suzanne Sullivan and Katelyn Waters filed statements with the New Canaan Police Department with Officer Kevin Casey using a NCPD issued "Voluntary Statement" form which carries a requirement for that a NCPD officer advise Suzanne Sullivan and Katelyn Waters were subject to enforcement provisions of C.G.S.§ 53(a)-157 (penalties for making a knowingly false statement to a police officer in an investigation is a Class A Misdemeanor).

37. On the date of February 22, 2010, the employment agreement between Michael Nowacki and Kaitlyn Waters was noted as "in force" in the Appellate Court decision AC 34577":

"On the date of February 22, 2010, there was no civil court issued restraining order or a criminal protective order in the hands of then Officer Kevin Casey (now Sergeant) which would have provided an authority for Officer Kevin Casey to issue a warning to the Plaintiff in this suit, to "threaten" the arrest of the plaintiff in this suit if he contacted either Suzanne Sullivan or Kaitlyn Waters."

38. The AC decision 34577 includes reference to an email sent to Katelyn Waters by the plaintiff terminating her employments effective 45 days from February 23, 2010 and Justice Borden issued this statement of facts  (referencing the date of February 22, 2010)  concerning the facts  the jury "reasonably could have been found"—

"No protective order, however, had been issued at that time forbidding the defendant from having contact with Sullivan or Waters."

(Note: in AC 34577 this plaintiff in this federal pleading is referenced as "the defendant in the Appellate Court's written decision on March 10 2010)

39. The Appellate Court decision authored by former Supreme Court jurist (now a trial judge referee), the Honorable David Borden, also writes in its published opinion (which was not challenged by the State of Connecticut through a petition for certification to the Connecticut Supreme Court):

"Nowhere in our jurisprudence have we allowed an officer to impose what is an ad hoc criminal protective order against an individual based upon a complaint. That Casey threatened the defendant with arrest based on a non-existent order certainly does not support the notion that the defendant's conduct was somehow less than lawful".

(Note: in the above quotation, the plaintiff in this federal suit was referenced in the written Appellate Court decision as "the defendant").

40. All judicial officers, in the several states, which included Connecticut, pursuant to Article VI of the Constitution of the United States are required to take an oath or to support the Constitution of the United States as the "supreme Law of the Land."

41. All of the named defendants as employees of the New Canaan Police Department in this complaint were also administered an oath of office defined by Title I, C.G.S. Chapter 4, §1-25 and/or sign a Code of Conduct and Conflicts of Interest ordinance "endorsement" referenced in the Town of New Canaan Charter in Sections 17.1-17.8.

42. In addition, New Canaan Police Department employees are further governed by a Manual of Conduct and Disciple, Rules and Regulations (13 pages) which includes

10

on page 5, the following as **Article 2: Presumption of Knowledge of Laws,**

**Ordinances and Orders**:

" Unless otherwise provide, all employees shall be presumed to have knowledge of the laws of Connecticut and the United States, all town and municipal ordinances, the provisions of these articles of Conduct and Discipline, and all General Orders and Regulations of the Department and it shall be no defense to show a lack of knowledge thereof."

43. In The New Canaan Police Department Policy Manual (39 pages including cover), are provisions in the **Canons of Police Ethics** (page 2), in ARTICLE 2. LIMITATIONS OF AUTHORITY, which state:

"The first duty of law enforcement officer, as upholder of the law, is to know its bounds upon in enforcing it.  Because he represents the legal will of the community, be it local, state, or federal, he must be aware of the limitations and proscriptions which the people, through the law, have placed upon him.  He must recognize the genius of the American system of government, which gives to no man, groups or men or institutions, absolute power, and he must insure that he, as a prime defender of the system, does not pervert its character."

## V.    Claims

44. **Claim 1**—Defendants, incorporating items 1-43 in this pleading,  (as employees of the Town of New Canaan in the New Canaan Police department) **individually** named as Officer Kevin Casey, Lieutenant William Ferri, Officer Joseph Farenga, Lieutenant Louis Gannon, Sergeant Christian Gray, Officer Daniel Gulino, Officer Thomas Swindon, Captain Leon Krolikowski and Police Chief Edward Nadriczny on the dates of February 24, 2010 through the morning of March 3, 2010, in filing and/or approving incident reports (CFS NOS. 1000002784 dated 2/22/2010, 1000002790 dated 2/22/2010, Supplementary 1000002784 filed on 2/23/2010, 1000002784 filed on 2/24/2010, 1000002866 filed on 2/24/2010, 1000002784 Supplementary) and by pursuing applications of arrest warrants of the plaintiff

11

(based upon CFS #1000002784 filed in the Norwalk Superior Court on 2/22/2010, CFS# 100002866 filed on 2/24/2010 filed in the Norwalk, Connecticut Superior Court) engaged in conduct which **abridged** fundamental rights of the plaintiff (captured in the oath or affirmation of office of required of judicial officers in the several states) referenced Article VI of the Constitution of the United States) and the following Amendments to the Constitution of the United States when applied to 42 U.S.C. §§ 1981, 1983, 1985 (c) and as supported by Connecticut Appellate Court decision AC 34577 (and supplementary decisions reached by federal courts in regards to individual and public official liabilities for abridgments of constitutional rights of citizens of the United States:

a. the First Amendment (freedom of speech to communicate with Suzanne Sullivan and Katelyn Waters);

b. Fourth (freedom from false claims, unlawful incarceration and malicious prosecution of probable cause which have no foundation in state or federal law);

c. Fifth Amendment (various abridgments of the plaintiff's freedom of life, liberty and property in pursuing a claim that the plaintiff could not contact employee Kaitlyn Waters or Suzanne Sullivan);

d. Ninth Amendment (infringement of familial rights caused by the issuance of a threat of arrest of the plaintiff for contacting the residence where his children were living in February 2010 until the plaintiff's custody rights were restored by family court orders on March 11, 2012);

    e. Fourteenth Amendment (denial by the defendants of the NCPD of substantive due process and equal protection from false claims for probable cause arrest resulting in malicious prosecution and incarceration of the plaintiff; and refusal in May 2015 by the NCPD to prosecute Katelyn Waters and Suzanne Sullivan for making knowingly false statements in their "complaints" filed on February 22 and February 24, 2010 inasmuch as there were no civil or criminal protective orders in place until February 24, 2010);

45. **Claim 2**—Defendants, incorporating points 1-44 in this pleading, (as employees of the Town of New Canaan in the New Canaan Police department) as public officials named as Officer Kevin Casey, Lieutenant William Ferri, Officer Joseph Farenga, Lieutenant Louis Gannon, Sergeant Christian Gray, Officer Daniel Gulino, Officer Thomas Swindon, Captain Leon Krolikowski and Police Chief Edward Nadriczny on the dates of February 24, 2010 through the morning of February 26, 2010, **abridged** fundamental Constitutional rights of the plaintiff defined in their oaths or affirmations required by Article VI of the Constitution of the United States, and its Amendments, when applied to protections provided in 42 U.S.C. §§ 1981, 1983. 1985 (c) as supported by the Connecticut Appellate Court decision AC 34577 and the federal court supplementary decisions:

    a. the First Amendment (freedom of speech to communicate with Suzanne Sullivan and Katelyn Waters)

    b. Fourth (freedom from false claims and malicious prosecution of probable cause);

    c.  Fifth Amendment (freedom of life, liberty and property in pursuing a claim that the plaintiff could not contact employee Kaitlyn Waters or Suzanne Sullivan);

    d.  Ninth Amendment (infringement of familial rights);

    e.  Fourteenth Amendment (denial of due process and equal protection from false claims for probable cause resulting in malicious prosecution)

46. **Claim 3**—James Cole, as an appointed public official elected as "Police Commissioner" individually and in his "official capacity", from the dates of March 2 through March 11, 2010, refused to investigate the claims of the plaintiff, surrounding the claims of abuses of "constitutional rights" and "limits of lawful authority" exceeded as noted in items 1-45 in the pleading, in the processing of incident reports and arrest warrants as noted in item 43, and in doing so engaged in a "conspiracy" to "abridge" the fundamental Constitutional rights of the plaintiff pursuant to items 1-56 above and in violation of 42 U.S.C. 1981, 1983, 1985 (c), and supported by the Connecticut Appellate Court decision AC 34577 and decisions of the federal court relating to oath of affirmation administered to James Cole pursuant to Article VI of the Constitution of the United States and the following Constitutional Amendments:

    a.  the First Amendment (freedom of speech to communicate with Suzanne Sullivan and Katelyn Waters):

    b  Fourth (freedom from false claims and malicious prosecution of probable cause arrests);

14

c. Fifth Amendment (freedom of life, liberty and property in pursuing a claim that the plaintiff could not contact employee Kaitlyn Waters or Suzanne Sullivan);

b. Ninth Amendment (infringement of familial rights);

c. Fourteenth Amendment (denial of due process and equal protection from false claims for probable cause resulting in malicious prosecution)

47. **Claim 4**—Defendant, The Town of New Canaan, incorporating items 1-45 above, failed in its duties to properly supervise and train members of the New Canaan Police Department in regards to protecting the rights of citizens pursuant to the application of 42 U.S.C.§§ 1981, 1983, 1985 (c), causing public humiliation of the plaintiff , loss of property of plaintiff, diminution of reputation in the community from the publication of the circumstances surrounding the arrest of the plaintiff including the "nolle" of allegations In October 2013 of an arrest warrant issued for the Plaintiff filed on June 17, 2010.

48. **Claim 5**—Defendant, The Town of New Canaan, incorporating items 1-46 above, on "ten occasions" since June 18, 2010, through the use of the access to services of the NCPD have been asked to investigate allegations/complaints filed, at the behest of the Office of First Selectman of the Town of New Canaan, which were attempts to disparage in a series of "complaints" which were based upon "false allegations" for any "probable cause" arrests to be sought of the plaintiff and such actions by the office of First Selectman are claimed in this pleading to be grounds for of the Fifth Amendment rights of the plaintiff of "life, liberty and property" as applied to 42 U.S.C.§§ 1983, and 1985 (c)

49. **Claim 6**—Defendants Robert E. Mallozzi and Pam Flynn, from the date of July 14, 2015 through the date of the Election Day, November 3, 2015, in refusing to engage the plaintiff (who announced his candidacy for the Office of First Selectman of the Town of New Canaan on July 14, 2015 as a petitioning candidate) in the "freedom of debate" embodied in "candidate forums" (moderated by the League of Women Voters and hosted by the New Canaan Advertiser) and refusing to respond to multiple requests for the access to the "freedom of assembly" in denying the plaintiff abilities (after forming the League of Registered Voters LLC on or about October 16, 2015) to town meeting hall facilities carrying television capabilities for nctv79 to "cablecast" televised "candidate forums" obstructed First Amendment rights of the plaintiff to engage in the freedom of debate and freedom of assembly in an abridgement of the Fourteenth Amendment of the Constitution when applied to 42 U.S.C. §§1983 and 1985 (c).

50. **Claim 7**—The plaintiff alleges that the refusal of the incumbent First Selectman to engage in "uninhibited robust and wide open" debates (citing **New York Times v. Sullivan**, 376 U.S. 254, 270 (1964)) when viewed in the light of the Supreme Court of the United States decision rendered on January 30, 1976 in **Buckley Et Al. v. Valeo, Secretary of the United States, Et Al** 424 U.S. 1 (1976) provides the basis of the allegations that Robert E. Mallozzi III abridged access to First Amendment rights of the public to the common advancement of political beliefs and ideas in obstructing the conducting of candidate forums moderated by the League of Women Voters, the New Canaan Advertiser and the League of Registered Voters LLC (formed by the plaintiff) by the First Amendment of the Constitutional rights of

16

the plaintiff the freedom of assembly, the freedom of debate embedded in the First Amendment of the Constitution and the Fourteenth Amendment to the Constitution as applied to 42 U.S.C. § §1983, 1985 (c) :

"In a republic where the people are sovereign, the ability of citizenry to make informed choices among candidates for office is essential, or the identities of those who are elected will inevitably shape the course of what we follow as a nation."

51. **Claim 8**—The plaintiff alleges that on September 27, 2015, the First Selectman Robert E. Mallozzi III, provided a "no fee" access to the League of Women Voters at the Waveny House (a Town of New Canaan owned facility) for a luncheon to conduct a "State of the Town" address **after** the First Selectman refused to participate in a candidate forum to be moderated by the LWV and to be hosted by the New Canaan Advertiser on October 19 2015 at the New Canaan Town Hall and in doing so is alleged to have used his incumbent position to offer "uncontested" views without the "uninhibited robust and robust debates" in a clear and present danger to the proper administration of the First and Fourteenth Amendments to the Constitution as applied to 42 U.S.C. §§1983, 1985 (c) and 1986.

52. **Claim 9**—The plaintiff claims damages from the State of Connecticut for the humiliation of the arrest warrant signed by Judge Michael Shay and prosecuted by the State of Connecticut on the date of February 24, 2010 for which the plaintiff was acquitted in the decision rendered on March 10, 2015.

53. **Claim 10**—The plaintiff claims damages from the Town of New Canaan, the employees of the Town of New Canaan's Police Department and the State of Connecticut for his expulsion from the Stanwich Club in Greenwich, Connecticut

17

which occurred before the Appellate Court acquitted the plaintiff and dismissed the charges on May 6, 2015 related to a potential retrial of the "violation of protective order" for sending one inadvertent email to Suzanne Sullivan on June 15, 2010 while she was protected by a criminal protective order.

54. **Claim 11**—The plaintiff seeks a ruling from the federal court awarding damages to the plaintiff from the State of Connecticut, for "cruel and unusual punishment" in the abridgement of the Eighth Amendment of the Constitution of the United States when reviewed in light of the Fourteenth Amendment to the Constitution of the United States as applied to 42 U.S.C. §1983, 1985 (c) and 1986, for the issuance of a  sentence delivered on May 8, 2012, by the Honorable Bruce Hudock, which placed a 30 year criminal protective order on the plaintiff for sending a single inadvertent email to a protected party, and in the course of the pre-trial and trial, the plaintiff allegesthe abridgment of fundamental Sixth Amendment rights of self-representation noted in AC 34577 by actors operating on behalf of the judiciary of the State of Connecticut does not exclude "liability damages" to be collected from the State of Connecticut when there "colorable" claim that conduct by state employees for "wanton", "reckless" or "malicious conduct" in their "official capacities" as "public officials" (Decisional case law of C.G.S. 4-165, does not exclude damages collected from the State of Conduct related conduct for liability claims by conduct by "judicial officers" found to be "wanton", "reckless" or "malicious" as alleged in this pleading)

## VI.    Prayer for Relief

55. The plaintiff seeks a protective order from "retaliations" pursuant to the proscriptive

provisions outlined in Title 18, Part I, Chapter 73 Section § 1514 (a) during the pendency of this litigation based upon the allegations set forth in this pleading.

56. The plaintiff seeks the scheduling of an expedited bench trial upon the completion of hearings of motions to dismiss, motions for discovery, requested depositions by either party and any other due process rights to be afforded to the defendants pursuant to the federal rules of civil practice.

57. The plaintiff seeks punitive and compensatory civil damages not less than combined at $5,000,000 for all defendants, commensurate with egregious abuses of lawful authority by the State of Connecticut, the Town of New Canaan, and the employees of the Town of New Canaan, individually and in their official capacities, as noted in this parties section of this pleading.

58. Absent an order from the court (based upon claims 7-9) for an order to convene proper election processes including "public debates" in "public fora" consistent with the rights of citizens to an "uninhibited robust public debate", plaintiff seeks the federal court to consider awarding at time of trial compensatory damages to the plaintiff for interference with the rights of the plaintiff for discrimination pursuant to 42 U.S.C. § 1983, be assessed to Robert E. Mallozzi, Ms. Pamela Flynn and the Town of New Canaan for "interference" of the rights of the plaintiff to seek a paid elective office in the Town of New Canaan which is currently compensated in excess of $140,000 per annum.

59. That the federal court issue orders, at time of trial, commensurate compensation of customary fees and costs to the Plaintiff as private attorney general associated with the filing of this civil rights litigation pursuant to provisions in 42 U.S.C. § 1988

in matters involving litigation of claims in 42 U.S.C. §§ 1983, 1985 (c), and 1986 matters.

60. The federal court  equitably assess to the defendants damages for the interest, and loss of investable assets of the plaintiff assessed by Internal Revenue Service and the State of Connecticut for the early liquidation of IRA assets from 2010 through the pendency of this federal litigation which was necessary to "protect the plaintiff's liberty interests" from abuses of fundamental constitutional rights by the defendants, individually and or in their "official capacities".

61. In light decision of the State of Connecticut to seek and be granted a "motion of joinder" to the four inter-related counts for prosecution in the Norwalk Superior Court (joined over the objections of the Plaintiff) and secured unjustifiably by the New Canaan Police Department on February 22-24, 2010 in violation of 42 U.S.C.§ 1981, 1983, 1985 (c) and 1986, and captured in the written Connecticut Appellate Court decision issued officially as AC 34577 on March 10, 2015, the plaintiff seeks punitive and compensatory damages for malicious prosecution, unlawful incarceration and false arrest resulting in "excessive bonds" collected by the State of Connecticut and withholding the rights to a "reasonable appeal bond".

62. The federal court consider awarding compensatory damages for the "suspension" of any re-employment opportunities for the five year period of time between February 22, 2010 and the dismissal/acquittal of all charges on May 6, 2015 entered on May 6, 2015 in the consideration of compensatory damages at time of trial.

63. The federal court consider at time of determination at the conclusion of all legal proceedings, any other remedy and relief commensurate with medical expenses (past, present and future) related to the stress endured by the plaintiff during the five year period commencing on February 22, 2010 and the dismissal/acquittal entered on May 6, 2015 in Norwalk Superior Court.

64. The court consider bi-furcating the State of Connecticut as a defendant, if necessary, at time of trial in light of pending legislation being considered in the State of Connecticut legislature on Friday, March 11, as currently proposed as SB 416 in the current legislative session which would provide two year extensions for any pending litigation filed involving the State of Connecticut with the Claims Commissioner.

Respectfully Submitted:

Michael J. Nowacki

Private Attorney General

319 Lost District Drive

New Canaan, CT  06840

Telephone: (203) 273-4296

Fax:  (203) 966-6474 (call first)

mnowacki@aol.com

## Certificate of Service

I hereby certify that on March 10, 2016, a copy of the foregoing copy of this Complaint was served by registered mail to the home address and/or the place of employment of each defendant, to the Claims Commissioner of the State of Connecticut, to the Attorney General of the State of Connecticut.  Defendants have been provided an addressed stamped envelope with waiver(s) of summons of service pursuant to the federal rules of practice and a copy of this filing, when posted, will be available through the Court's CM/ECF system.

By: _____

Michael J. Nowacki
Private Attorney General
319 Lost District Drive
New Canaan, CT  06840
Telephone:  (203) 273-4296
Fax:  (203) 966-6474 (call first)
mnowacki@aol.com

## Certification of Pleading Authenticity

The plaintiff in the representations made in this pleading attests under penalty of perjury that to the best of his abilities, this cause of action is based upon a truthful accounting of dates and events supporting the claims filed herein.

_____
Michael J. Nowacki

State of CT.
County of Fairfield
On this the 10th of March 2016, before me, Alexa J Roy personally appeared Michael J Nowacki known to me to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained. In witness whereof I hereunto set my hand.

Alexa J Roy    3/10/16

ALEXA J ROY
NOTARY PUBLIC
State of Connecticut
My Commission Expires Feb. 29, 2020

22

Mailing Address List of Plaintiffs and Defendants as of 3/10/2016

**Plaintiff**

Michael J. Nowacki

319 Lost District Drive

New Canaan, CT  06840

**Defendants**

The Town of New Canaan

c/o First Selectman Robert E. Mallozzi III

Town Hall

77 Main Street

New Canaan, CT  06840

The State of Connecticut

c/o Commissioner, Office of Claims Commissioner

165 Capitol Avenue, Suite 123

Hartford, CT  06106

Office of Attorney General

c/o George Jepsen

55 Elm Street

Hartford, CT 06106

Kevin Casey

c/o New Canaan Police Department

174 South Avenue

New Canaan, CT  06840

James Cole

23 Kelley Green

New Canaan, CT  06840

William Ferri
c/o New Canaan Police Department
174 South Avenue
New Canaan, CT  06840

Joseph Farenga
c/o New Canaan Police Department
174 South Avenue
New Canaan, CT  06840

Pamela Flynn
c/o Town Hall
77 Main Street
New Canaan, CT  06840

Louis Gannon
c/o New Canaan Police Department
174 South Avenue
New Canaan, CT  06840

Christian Gray
c/o New Canaan Police Department
174 South Avenue
New Canaan, CT  06840

Daniel Gulino
c/o New Canaan Police Department
174 South Avenue
New Canaan, CT  06840

Leon Krolikowski
c/o New Canaan Police Department
174 South Avenue
New Canaan, CT  06840

Robert E. Mallozzi III
First Selectman
c/o Town Hall
77 Main Street
New Canaan, CT  06840

Edward Nadriczny
96 Wooodlawn Road
Monroe, CT  06468

Thomas Swindon
c/o New Canaan Police Department
174 South Avenue
New Canaan, CT  06840

# EXHIBIT 1

******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

STATE OF CONNECTICUT *v.* MICHAEL NOWACKI
(AC 34577)

Lavine, Beach and Borden, Js.

*Argued October 22, 2014—officially released March 10, 2015*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, geographical area number twenty, Hudock, J.)

*Roy S. Ward,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* senior assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, *Suzanne M. Vieux,* supervisory assistant state's attorney, and *Justina Moore,* assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant, Michael Nowacki, appeals from the judgment of conviction, rendered after a jury trial, of one count of harassment in the second degree in violation of General Statutes § 53a-183 (a) (2),[1] and one count of criminal violation of a protective order in violation of General Statutes § 53a-223 (a).[2] The defendant claims on appeal that: (1) the evidence was insufficient to support a conviction of criminal violation of a protective order; (2) the trial court improperly denied him a subpoena for a witness critical to his defense and improperly curtailed his testimony regarding that potential witness, in violation of due process; (3) the trial court improperly failed to instruct the jury that criminal violation of a protective order is a general intent offense; (4) his conviction of harassment in the second degree violated his right to due process because § 53a-183 (a) (2) is unconstitutional as applied to the defendant; and (5) the trial court improperly entered a thirty year protective order against the defendant. We reject the defendant's first claim. Because we agree with the defendant on his second and fourth claims, however, we reverse the judgment of the trial court.[3]

The defendant was charged in an initial information with one count of disorderly conduct in violation of General Statutes § 53a-182, and one count of illegal use of a motor vehicle with the intent to harass or intimidate in violation of General Statutes § 14-240a. The defendant subsequently was charged in a separate information with one count of harassment in the second degree in violation of § 53a-183, and was then further charged in a third information with criminal violation of a protective order in violation of § 53a-223. The three informations were joined for trial. The jury found the defendant guilty of criminal violation of a protective order and harassment in the second degree, and not guilty of disorderly conduct and illegal use of a motor vehicle with intent to harass or intimidate. The trial court rendered judgment of conviction in accordance with the jury's verdicts. This appeal followed.

The jury reasonably could have found the following facts in support of its verdicts. The totality of the charges in the present case stem from the dissolution of the defendant's marriage to Suzanne Sullivan in 2005. From 2005 until the end of 2009, the defendant and Sullivan shared joint custody of their children. Starting in October, 2009, the defendant and Sullivan jointly employed Katelyn Waters as a nanny for their two children. At that time, the defendant drafted an employment agreement for Waters that both he and Waters signed. As a result of the dissolution judgment, the defendant was required to pay 65 percent of Waters' salary and expenses, including a lease of a motor vehicle for her use.

In December, 2009, Sullivan was awarded full custody of their two children. At that time, Waters began to believe that she was exclusively employed by Sullivan. Sullivan reinforced this belief by telling Waters she was her sole employer. The defendant, on the other hand, continued to believe that Waters was still employed by both him and Sullivan, per the terms of the employment agreement and in light of his payment of the majority of Waters' expenses.

On February 21, 2010, the defendant attempted to contact Waters multiple times by phone about the tire maintenance of the leased vehicle. At the time of the calls, Waters was working at a separate job. Waters answered one of the phone calls, informed the defendant that she no longer worked for him pursuant to the change in the children's custody arrangements, and asked him not to contact her again. Shortly after, the defendant drove to Waters' place of employment and confronted her about the situation. Waters again asked the defendant not to talk to her and to leave immediately or she would contact the police. The defendant informed Waters that he would be confiscating the leased vehicle, which he then took with Waters' personal property inside. Out of fear for her personal safety, Waters called the police, who then arranged for her personal items to be returned.

The following morning, Sullivan observed the defendant in a car parked on a shared driveway in front of her house. She then drove Waters and her younger child to school. The defendant closely followed Sullivan's car in his vehicle for the entire distance to the school. After they arrived at the school, while Sullivan was walking the child into the building, the defendant exited his car and banged on the rear window of Sullivan's vehicle. The defendant yelled at Waters through the glass in an attempt to ask her questions. Sullivan yelled at the defendant to get away from her car, entered her vehicle and drove to the New Canaan Police Department to provide a sworn statement of the morning's events.

After returning to Sullivan's house alone, Waters again observed the defendant sitting in his car on the shared driveway. Waters called the police and Kevin Casey, an officer with the New Canaan Police Department, responded to the call. Casey specifically warned the defendant while they were outside Sullivan's house to cease all contact with Sullivan and Waters, and not to contact them by phone, e-mail, or in person. Casey informed the defendant that he would be arrested if he continued to contact either Sullivan or Waters. No protective order, however, had been issued at that time forbidding the defendant from having contact with Sullivan or Waters.

The next day, February 23, 2010, the defendant sent an e-mail to Waters that threatened legal action and

demanded compliance with the employment agreement. Following Waters' receipt of the e-mail, she contacted the police, and the defendant was arrested and charged in separate informations with disorderly conduct and illegal use of a motor vehicle with the intent to harass or intimidate in regards to the events on February 22, 2010, and harassment in the second degree in regards to the e-mail sent to Waters on February 23, 2010.

Following arraignment on February 24, 2010, the trial court issued protective orders prohibiting the defendant from having contact with either Sullivan or Waters in any manner. On June 15, 2010, Sullivan received an e-mail from the defendant. In addition to Sullivan, the e-mail also was addressed to Wayne Fox, an attorney representing the town of Darien, as well as the editor's desk at the Darien Times, a local newspaper. The substance of the e-mail was unrelated to the defendant's ongoing dispute with Sullivan.[4] Sullivan testified, however, that she routinely received e-mails from the defendant unrelated to her. After receiving the e-mail, Sullivan reported the contact to the New Canaan police. The defendant was rearrested and charged with criminal violation of a protective order.

The defendant represented himself at trial and was found guilty of criminal violation of a protective order and harassment in the second degree. The trial court rendered judgment in accordance with the jury's verdict and sentenced the defendant to a total effective term of five years incarceration, execution suspended after fifteen months. It also issued a protective order forbidding the defendant from contacting Sullivan or Waters in any manner for a period of thirty years and ten years, respectively. This appeal followed.

I

The defendant's first claim is that there was insufficient evidence to support the conviction of criminal violation of a protective order. He argues that the evidence presented by the state was insufficient to demonstrate a general intent to send the June 15, 2010 e-mail to Sullivan, and in doing so, violate the protective order. We disagree.

"We begin with the well established principles that guide our review. In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Stephen J. R.*, 309 Conn. 586, 593–94, 72 A.3d 379 (2013).

Criminal violation of a protective order is a crime requiring proof of general intent. *State* v. *Fagan*, 280 Conn. 69, 77, 905 A.2d 1101 (2006). "General intent is the term used to define the requisite mens rea for a crime that has no stated mens rea; the term refers to whether a defendant intended deliberate, conscious or purposeful action, as opposed to causing a prohibited result through accident, mistake, carelessness, or absent-mindedness. Where a particular crime requires only a showing of general intent, the prosecution need not establish that the accused intended the precise harm or precise result which resulted from his acts." (Internal quotation marks omitted.) Id.

The defendant claims that the state provided insufficient evidence of his intent to send the e-mail to Sullivan. His theory of defense throughout the trial was that the e-mail was sent to Sullivan by mistake and that he intended to send the e-mail to Susan Shultz, a reporter for the Darien Times, but inadvertently selected Sullivan's name instead of Shultz' when addressing the e-mail.

The jury was not required, however, to credit this theory. The defendant's argument fails to distinguish between direct and circumstantial evidence. That the state did not provide any direct evidence that the defendant intended to send the e-mail to Sullivan does not necessarily mean that it did not provide enough circumstantial evidence for the jury to conclude the same. "[D]irect evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) Id., 80–81.

"[T]he only kind of an inference recognized by the

law is a reasonable one . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 93, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). A reasonable juror could infer from the testimony of Sullivan that the defendant had previously inundated her with hundreds of e-mails. The reasonable juror could also credit Sullivan's testimony that frequently those e-mails were about matters that had nothing to do with her and that these e-mails caused her severe distress. Prior misconduct evidence has been held admissible for the purpose of demonstrating intent when the defendant claims mistake or accident; see *State* v. *Beavers*, 290 Conn. 386, 402–404 and n.17, 963 A.2d 956 (2009); and the jury could have drawn such an inference from Sullivan's testimony. Therefore, the jury, assessing the evidence presented at trial, reasonably could have concluded that the defendant intended to send the e-mail to Sullivan. Consequently, there was sufficient evidence to sustain the conviction of criminal violation of a protective order.

## II

The defendant's next claim also involves his conviction of criminal violation of a protective order, which was based entirely on his sending of the June 15, 2010 e-mail to Sullivan. Specifically, he claims that the trial court improperly failed to issue a subpoena for a witness, Shultz, who was included on his list of witnesses submitted to the court for subpoenas pursuant to Practice Book § 7-19,[5] and prevented the defendant from testifying about previous communications between him and Shultz. The defendant argues that, in doing so, the trial court violated his right to compulsory process and to present a meaningful defense under the sixth amendment, and that these violations necessitate a new trial. We agree with the defendant.

The following additional facts are relevant to this claim. Before trial, pursuant to Practice Book § 7-19, the defendant submitted a list of witnesses he desired to subpoena to testify. The extensive list totaled ninety-four individuals. Subpoenas were denied for a vast majority of those listed, as the trial court deemed them irrelevant for the purposes of the criminal trial.[6] Among the individuals on the list who were rejected, however, was Shultz, who the defendant maintained was the intended recipient of the e-mail received by Sullivan.

When making a proffer of relevancy in a hearing before the court, the defendant asserted that Shultz was necessary as the person to whom he intended to send the June 15, 2010 e-mail.[7] The state did not object to the witness or proffer. When the court released its list of approved witnesses for subpoena it did not approve the request to subpoena Shultz. The court did not articulate a reason why Shultz was not approved.

During the trial, Sullivan testified that, before the protective order, she routinely received e-mails from the defendant that were unrelated to her and that he had sent her thousands of e-mails similar to the one received on June 15, 2010. Sullivan conceded, however, that she was unsure whether the e-mail in question in the present claim was intended for her receipt.

The defendant testified that he intended to send the e-mail to Shultz, but due to the similarity in their names he accidentally sent the e-mail to Sullivan. When he attempted to address his relationship with Shultz, however, the court excluded the testimony as irrelevant. It further excluded any testimony involving any articles that Shultz had written.[8]

It is undisputed that the state, in order to prove a violation of a protective order, had to establish that the defendant intended to send the e-mail in question to Sullivan. See part I of this opinion. It is also undisputed that the defendant's sole theory of defense to this claim was that he did not intend to send the e-mail to Sullivan; rather, he intended to send it to Shultz but mistakenly addressed the e-mail to Sullivan through his computer's address book. Furthermore, the state does not contest the defendant's assertion that Shultz' and Sullivan's e-mail addresses were near each other on the e-mail program's address book.

The sixth amendment of the United States constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ." The right to compulsory process has been made applicable to state prosecutions through the due process clause of the fourteenth amendment. See *Washington* v. *Texas*, 388 U.S. 14, 18, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); see also *State* v. *Wright*, 273 Conn. 418, 423 n.5, 870 A.2d 1039 (2005). The same right is protected under article first, § 8, of our state constitution. *State* v. *Lockhart*, 298 Conn. 537, 555, 4 A.3d 1176 (2010).

"It is well established that [t]he federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies." (Internal quotation marks omitted.) *State* v. *Baltas*, 311 Conn. 786, 798, 91 A.3d 384 (2014).

"Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his [compulsory process] rights, the constitution does not require that a defendant be permitted to present every

piece of evidence he wishes." (Internal quotation marks omitted.) *State v. Santana*, 313 Conn. 461, 470, 97 A.3d 963 (2014). "The defendant's sixth amendment right . . . does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated." (Internal quotation marks omitted.) *State v. Wright*, 149 Conn. App. 758, 766, 89 A.3d 458, cert. denied, 312 Conn. 917, 94 A.3d 641 (2014).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State v. Shaw*, 312 Conn. 85, 104–105, 90 A.3d 936 (2014). "A party is not required to offer such proof of a fact that it excludes all other hypotheses; it is sufficient if the evidence tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence *tend* to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Emphasis in original; internal quotation marks omitted.) *State v. King*, 249 Conn. 645, 669, 735 A.2d 267 (1999).

To establish a violation of the right to compulsory process when a defendant is deprived of a certain witness at trial, "[h]e must at least make some plausible showing of how [the] testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S. Ct. 3440, 73 L. Ed. 2d 1193 (1982). "Moreover, a defendant may not successfully establish a violation of his rights . . . to compulsory process without first taking reasonable steps to exercise those rights. . . . To exercise his sixth amendment compulsory process rights diligently, a defendant is required to utilize available court procedures, such as the issuance of subpoenas, as well as requests for continuances or material witness warrants that may be reasonably necessary to effectuate the service process." (Citations omitted.) *State v. Tomas D.*, 296 Conn. 476, 498, 995 A.2d 583 (2010), overruled on other grounds by *State v. Payne*, 303 Conn. 538, 564, 34 A.3d 370 (2012).

"The standard of review we apply to a trial court's evidentiary rulings is well settled. Such rulings are entitled to great deference. . . . In our review, we make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Lewis*, 146 Conn. App. 589, 601, 79 A.3d 102 (2013), cert. denied, 311 Conn. 904, 83 A.3d 605 (2014). "The trial judge must consider many factors in ruling on relevancy. . . . In arriving at its conclusion, the trial court is in the best position to view the evidence in the context of the entire case, and we will not intervene unless there is a clear abuse of the court's discretion." (Internal quotation marks omitted.) Id., 602–603.

In the present case the defendant presented a theory of mistake. He testified that the act of sending the e-mail was inadvertent and not intentional. As both parties agreed that he did in fact *send* the e-mail to Sullivan, the effectiveness of the defendant's theory hinged on the credibility of his testimony. Therefore, to present an effective defense on the theory of mistake, the defendant was entitled to provide the jury with the context in which the e-mail was sent.

Concurrent with testimony he desired to present from Shultz, the defendant also wished to provide details about why the e-mail was being written, to whom it was to be sent, why those people were to receive the e-mail, and the nature of those persons' interactions with the defendant in order to establish the full context for his theory of defense. The defendant pursued this line of questioning and was able to explain, without objection, who Fox was and why the defendant was sending the e-mail to him. When the defendant attempted to explain, however, the nature of his relationship with Shultz, or the context in which the e-mail was to be sent to her, the trial court sustained the state's objection to the testimony as irrelevant. The defendant's view of the nature of his relationship with Shultz, however, as well as the reason why he would send her an e-mail, easily passes what our jurisprudence has repeatedly recognized as the low hurdle of relevance. See, e.g., *State* v. *Allen*, 289 Conn. 550, 562, 958 A.2d 1214 (2008); *State* v. *Burney*, 288 Conn. 548, 565, 954 A.2d 793 (2008); *Lombardi* v. *East Haven*, 126 Conn. App. 563, 572, 12 A.3d 1032 (2011).

We conclude that the refusal of the trial court to authorize a subpoena for Shultz as a witness and the court's refusal to permit the defendant to explain his relationship with Shultz was an abuse of discretion that deprived him of his right to compulsory process and to present a meaningful defense. The subject matter of Shultz' reporting, when examined together with the content of the defendant's e-mail, tends to explain why the e-mail may have been intended for Shultz. Shultz' testimony, therefore, was uniquely valuable to the defendant because she would have been in a position

to provide evidence that corroborated the defendant's theory of defense. This corroboration could well have bolstered the defendant's credibility as a witness and, therefore, his claim that he did not intend to send the e-mail to Sullivan. As we have long recognized, "[e]vidence is admissible when it tends to establish a fact in issue or *to corroborate other direct evidence in the case*." (Emphasis added; internal quotation marks omitted.) *State* v. *Dolphin*, 178 Conn. 564, 571, 424 A.2d 266 (1979).

As the state has conceded in its brief, the defendant's intended recipient and purpose in sending the e-mail was at issue in the trial, and the defendant contested the state's assertions in these respects as part of his theory of defense. To consider that theory, the jury would have had to look into the mind of the defendant when he was sending the e-mail to determine his intent, which the jury must infer from the defendant's testimony and other circumstantial evidence, including corroborating witnesses. "Because direct evidence of an accused's state of mind typically is not available, his intent often must be inferred from his conduct, other circumstantial evidence and rational inferences that my be drawn therefrom. . . . An accused's own words . . . constitute particularly compelling, direct evidence of his intent." (Citations omitted.) *State* v. *Winot*, 294 Conn. 753, 768, 988 A.2d 188 (2010).

That method of examination by the fact-finder places the credibility of the defendant and his reliability as a witness into stark relief. *State* v. *Alexander*, 254 Conn. 290, 297, 755 A.2d 868 (2000). When a witness' reliability is at issue, "the trial court must allow a defendant to expose to the jury facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Provost*, 251 Conn. 252, 256, 741 A.2d 295 (1999), cert. denied, 531 U.S. 822, 121 S. Ct. 65, 148 L. Ed. 2d 30 (2000). Both the defendant's testimony and Shultz' testimony were relevant and critical to the strength of the defendant's defense, and as a consequence the court improperly failed to issue a subpoena and to permit the defendant to testify as to the context in which he intended to send the e-mail.

The state argues that the court's refusal to allow the defendant to testify about Shultz and to issue the subpoena for Shultz was harmless. It asserts that, because the defendant was given the opportunity to testify that the e-mail was sent erroneously, and because it was undisputedly sent to other members of the Darien Times and Fox, the jury was capable of gauging the viability of the defendant's theory without the testimony of the intended recipient or the defendant's own contextual testimony. The state characterized the evidence as, at best, "minimally relevant," and

cumulative of the defendant's testimony. We are not persuaded by the state's argument.

When this court concludes that the trial court has abused its discretion in making an evidentiary ruling, we then must decide whether the impropriety was harmless. "If an impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt." *State v. Cavell,* 235 Conn. 711, 720, 670 A.2d 261 (1996). "Whether a constitutional violation is harmless in a particular case depends upon the totality of the evidence presented at trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless." (Citation omitted; internal quotation marks omitted.) *State v. Peeler,* 271 Conn. 338, 399, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). The trial court's ruling denying a subpoena for Shultz and limiting the defendant's testimony regarding their relationship was not harmless beyond a reasonable doubt.

It is true that, as the state claims, the defendant was able to testify that the e-mail was a mistake and to point to the other recipients included in the e-mail address. This testimony, however, was dependent on the defendant's own credibility, and the defendant was prevented from providing a full explanation as to *why* it was a mistake. Without Shultz' corroborating evidence or the defendant's ability to explain the e-mail in context, however, the other addresses included on the e-mail were consistent with Sullivan's claim that the e-mail was deliberately sent to her as part of the defendant's usual pattern of behavior prior to the protective order.

A reasonable juror upon contemplation of the evidence would have had no information about Shultz *at all*, beyond that she was employed by the Darien Times. That juror would be presented with fundamental questions that would affect the credibility of the defendant's theory, such as why the defendant would e-mail Shultz, how they knew each other, why Shultz would desire the information in the e-mail, and whether they had e-mailed about the same topic before. Shultz was the only neutral, third-party witness who could provide both the answers to these questions and substantiate the defendant's theory of defense.

Moreover, the defendant lacked alternative means to secure Shultz' testimony. As a non-attorney self-represented party, the defendant was dependent upon the trial court under the provisions of Practice Book § 7-19 to provide what normally is within the power of an attorney. Unlike other cases in which this court has considered requests for subpoenas by self-represented parties denied by the trial court, the defendant's subpoena of Shultz did not seek to include irrelevant information; see *Nowacki v. Nowacki,* 144 Conn. App. 503, 510, 72 A.3d 1245, cert. denied, 310 Conn. 939, 79 A.3d

891 (2013); did not try to compel an individual already present; see *O'Hara* v. *Mackie*, 151 Conn. App. 515, 518, 97 A.3d 507 (2014); and did not seek access to information available by other means of discovery. See *Clark* v. *Clark*, 130 Conn. App. 786, 791, 26 A.3d 640 (2011). Accordingly, the state has not met its burden of proving the error harmless beyond a reasonable doubt.

### III

With respect to the defendant's conviction of harassment in the second degree, he claims that § 53a-183 (a)(2) is unconstitutional as applied to the facts of his case because his conviction was dependent upon the content of the e-mail to Waters, rather than the manner in which it was communicated, and therefore violated his first amendment right to free speech. We agree with the defendant and consequently reverse his judgment of conviction of harassment in the second degree.

The following additional facts are relevant to this claim. When she was first employed by the defendant, Waters signed an employment agreement articulating her responsibilities as a full-time nanny. The agreement set forth her wages, duties, and other associated benefits. The agreement also required that forty-five days notice be given by either party wishing to terminate the contract. Although Waters and the defendant signed the contract, Sullivan did not.

The e-mail to Waters focused on the alleged breach in the agreement.[9] In the e-mail, the defendant threatened Waters with legal action due to her violation of the employment agreement. He specifically claimed that the statement Waters gave to the police the day before could result in perjury charges against her. The defendant further claimed that Waters was using his credit card without permission and was withholding information needed for tax purposes. He pointed out that he still employed Waters as she had not provided the forty-five days notice required by the agreement.

In the e-mail, the defendant demanded that Waters also send a weekly e-mail accounting for her car and cell phone use, and indicated he would be asking the New Canaan Police Department to investigate his claims and prosecute if necessary. He concluded by issuing a demand for her to comply with the agreement.

Waters claimed she feared what the defendant would do following the e-mail. She indicated that she found the content of the e-mail threatening. As part of Waters' testimony during trial, she testified to feeling afraid when she received the e-mail. The state emphasized that this fear was in part due to its connection to the perjury charges threatened by the defendant.[10]

On cross-examination, Waters testified that she grew concerned before the events starting on February 21, 2010, by the defendant's increasingly aggressive behavior toward her. Sullivan and the defendant's children.

She admitted, however, that there were no specific events that led to that concern. Rather, she testified that she had heard of nonspecific aggressive behavior through Sullivan, certain news reports of an incident involving the defendant, and from other individuals in the town. She conceded that her fear grew not out of her interactions with the defendant, but out of her understanding of what the defendant's behavior had generally become.

When asked by the defendant, on cross-examination, what there was about the February 23, 2010 e-mail that she found threatening, Waters responded by reading the entirety of the e-mail. When asked why she did not view the e-mail as related to her employment by the defendant, Waters responded that she did not consider the employment agreement to be in effect at the time the e-mail was sent.

We begin our analysis with the legal principles that govern the present claim. When assessing the constitutionality of a statute, we exercise de novo review and make every presumption in favor of the statute's validity. *State* v. *Winot*, supra, 294 Conn. 758–59. We are also mindful that "legislative enactments carry with them a strong presumption of constitutionality, and that a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt . . . ." *Packer* v. *Board of Education*, 246 Conn. 89, 101, 717 A.2d 117 (1998).

"Our . . . inquiry . . . extends only to those portions of the statute that were applied to the defendant in this case." *State* v. *Indrisano*, 228 Conn. 795, 804, 640 A.2d 986 (1994). We therefore confine our analysis to the provisions of § 53a-183 under which the defendant was convicted, namely, subdivision (a) (2).

In his brief, the defendant argues that his conviction under § 53a-183 (a) (2) violated the unconstitutional vagueness doctrine because it "impermissibly delegates basic policy matters to [police officers], judges, and juries for resolution on an ad hoc and subjective basis." *Grayned* v. *Rockford*, 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). His argument centers on this court's decision in *State* v. *LaFontaine*, 128 Conn. App. 546, 16 A.3d 1281 (2011).

The court in *LaFontaine* addressed three distinct but interrelated claims: that § 53a-183 (a) (3)[11] was unconstitutionally vague on its face; that it was unconstitutionally vague as applied to that case; and that the statute was unconstitutional under the first amendment as applied to that case. Id., 548, 549. These three types of claims, although distinct from one another, have been considered closely related by both our Supreme Court and the United States Supreme Court. See *Grayned* v. *Rockford*, supra, 408 U.S. 109; see also *State* v. *DeLoreto*,

265 Conn. 145, 165, 167–68, 827 A.2d 671 (2003).

When deciding *LaFontaine*, this court rejected the notion that § 53a-183 (a) (3) was facially unconstitutionally vague. It concluded that, although the term "annoy" had been considered unconstitutionally vague in the past, existing jurisprudence had provided sufficient interpretive gloss to render it constitutional. *State v. LaFontaine*, supra, 128 Conn. App. 553–54; see also *State v. Indrisano*, supra, 228 Conn. 818–19; *State v. Cummings*, 46 Conn. App. 661, 672–74, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997). This court also rejected the unconstitutional vagueness as applied argument in *LaFontaine*, concluding that the defendant in that case had not created a plausible argument to show he lacked fair warning about his conduct. *State v. LaFontaine*, supra, 555.

Although the defendant in the present case couches his challenge to § 53a-183 (a) (2) in terms of unconstitutional vagueness, his argument is based on a violation of the first amendment, as in *LaFontaine*. See id. That part of the *LaFontaine* analysis did not discuss § 53a-183 (a) (3) in terms of vagueness, but whether the statute was unconstitutional as applied—a free-standing first amendment analysis, separate and apart from the constitutional vagueness doctrine. See id. ("[T]he defendant is implying not that the statute gave inadequate notice but, rather, that the statute impermissibly criminalized his speech. In other words, this is a pure first amendment claim in the guise of a vagueness challenge . . . ."). The court in *LaFontaine* noted that, although not facially overbroad, the prosecution under § 53a-183 in that case rested entirely on the content of the speech and not the manner in which it was spoken. Id., 557. In doing so, the conviction "was based on an impermissible construction of § 53a-183 (a) (3), which implicated [the defendant's] first amendment rights." (Internal quotation marks omitted.) Id., 557.

In so concluding, this court reaffirmed a bright-line rule established by our Supreme Court that had been applied in previous constitutional challenges to § 53-183 (a), namely, that although the state could look to the content of a communication to establish the intent to harass, it could not prosecute on the basis of that content. Rather, it is the harassing manner in which the communication took place that is prohibited. See, e.g., *State v. Murphy*, 254 Conn. 561, 568, 757 A.2d 1125 (2000) (§ 53a-183 proscribes harassing conduct of sending mail, not content of mail); *State v. Bell*, 55 Conn. App. 475, 481, 739 A.2d 714 (§ 53a-183 proscribes conduct, not content of telephone calls), cert. denied, 252 Conn. 908, 743 A.2d 619 (1999); *State v. Anonymous (1978–4)*, 34 Conn. Supp. 689, 696, 389 A.2d 1270 (1978) (same).

*LaFontaine* concluded that, if a prosecution of a defendant under § 53a-183 (a) is based entirely on con-

tent, that application of the statute violates the first amendment and must be deemed unconstitutional as applied to that defendant's conduct. *State* v. *LaFontaine*, supra, 128 Conn. App. 558. The defendant in the present case claims that his prosecution under § 53a-183 (a) (2) violates this longstanding rule.

As the state pointed out in its brief, however, our Supreme Court has modified that rule. In *State* v. *Moulton*, 310 Conn. 337, 362, 78 A.3d 55 (2013), the court held that § 53a-183 (a) proscribes a manner of communication that also contains certain forms of harassing and alarming speech, as well as conduct. The court, in examining a single telephone call, concluded that "the term 'manner' refers broadly to the way in which one performs an act. . . . Certainly, the words that a person uses during the course of a telephone call, along with other aspects of the content of the call, including, for example, the caller's tone of voice, are no less integral to the determination of whether the call was made or conducted in such a way as to harass or alarm. . . . [T]he manner in which a call is made encompasses its content, and is not confined solely to the timing and placement of the call." Id., 358–59.

The court placed an important caveat upon this expansive language and limited the consideration of content to speech that would be deemed to be unprotected under the first amendment. Id., 362. Thus, *Moulton* modified the rule in *LaFontaine* only insofar as opening consideration of the content of communication when that content falls outside protected speech; for example, when it contains obscenities, true threats, or fighting words. See id.; see also *Virginia* v. *Black*, 538 U.S. 343, 359, 123 S. Ct 1536, 155 L. Ed. 2d 535 (2003).

Based upon this jurisprudential shift, there are now two steps to be taken in determining whether a prosecution under § 53a-183 (a) constitutes an unconstitutional violation of the first amendment as applied to the defendant. The defendant must first demonstrate that his prosecution was based upon the content of his communication. If we determine that the prosecution was based upon his conduct or manner of communication, rather than on the content of his communication, then our inquiry ends for purposes of a first amendment analysis, and the statute is not unconstitutional as applied. If, however, the defendant was prosecuted on the basis of the content of his communication, we must proceed to the second step, and examine that communication to determine if it falls within the wide aegis of protected speech. If it falls within that aegis, then the rule articulated in *LaFontanie* applies, and the statute is unconstitutional as applied to the defendant's case. If it falls, however, in one of the narrow exceptions to protected speech, then the rule in *Moulton* controls and the statute is not unconstitutional as applied.

The defendant argues that the means by which he

was convicted was based on the content of his e-mail, the substance of which he claims fell within the bounds of a normal interaction between contracting individuals. We agree with the defendant that his conviction rested upon the content of the e-mail, and not the conduct of sending it. A contract existed between the defendant and Waters about her duties as a nanny. The defendant first attempted to contact Waters, by phone, about the maintenance of a vehicle *he* owned and was leasing to her as part of her employment. The e-mail that was sent to Waters was about her failure to comport with provisions of her employment agreement. This falls well within the norm for communications in a contractual relationship.

When asked by the state about the e-mail "where the defendant indicate[d] that [she] could be charged with perjury," Waters indicated she was threatened and afraid. On cross-examination, she clarified what she found "threatening" about the e-mail by reading the entire content of the e-mail before the jury, and testified that she found the entire e-mail threatening. Waters' expressed reactions related entirely to statements found within the e-mail. It is clear that Waters was frightened by the content of the e-mail sent to her by the defendant. The state's closing argument reinforced the notion that it was the content of the email that frightened Waters. See footnote 10 of this opinion.

Thus, the basis for Waters' fear was what the defendant *stated*, not in the manner in which he provided the statement. We agree with the defendant that the evidence presented before the jury, specifically Waters' own testimony, indicates that she found the content of the e-mail troubling because of the legal threats and the demands for compliance with her employment agreement. Therefore, the defendant has satisfied the first step of the *Moulton* inquiry.

The second step of our inquiry is straightforward. The state concedes that the content of the defendant's e-mail to Waters did not fall outside the realm of protected speech. It specifically disclaims that the e-mail contained "true threats." See, e.g., *State* v. *Krijger*, 313 Conn. 434, 449, 97 A.3d 946 (2014). Although the defendant threatened legal action against Waters, this is not the type of statement contemplated within the definition of a true threat. Rather, such threats encompass those of serious expressions of an intent to commit an act of unlawful violence. Id., 449; see also *State* v. *DeLoreto*, supra, 265 Conn. 154. Rather, what the defendant sent to Waters was an e-mail from a disgruntled employer to an employee. Such compliance demands may sometimes contain threats of legal action, as in this case. Such threats, however, are not true threats for the purposes of the first amendment. To criminalize an e-mail, even a contentious e-mail, which occurs within the environment of a contract dispute

simply because one party does not wish to communicate with the other violates the free speech rights of the writer of the e-mail.

The state claims, nonetheless, that sending the single e-mail was sufficiently threatening when placed in the context of his and Waters' verbal altercations before the e-mail was sent. Our Supreme Court recognized in *Moulton* that it was possible for a single act, such as a single telephone call, to be harassing in violation of § 53-183 (a) based upon the circumstances surrounding the call. *State* v. *Moulton*, supra, 310 Conn. 360 n.21. The court also noted, however, that in such a circumstance "it is far more likely that a lone telephone call will be found to be harassing or alarming on the basis of the offensive or abusive content of the call." Id.

The state concedes that there was no restraining order or protective order issued restricting the defendant's communication with Waters. Instead, the state argues that the defendant's warning by Casey that he should have no further contact with Waters after she filed a report with the police created circumstances sufficient to make the conduct of sending the single e-mail harassing.

We are not persuaded that Casey's warning to the defendant that he would be arrested if he contacted Waters again provided sufficient support to show that the act of sending an e-mail was harassing conduct. Protective orders have specific statutory requirements that have been set out by the legislature. See, e.g., General Statutes § 54-1k. Nowhere in our jurisprudence have we allowed an officer to impose what is essentially an ad hoc criminal protective order against an individual based upon a complaint. That Casey threatened the defendant with arrest based on a nonexistent order certainly does not support the notion that the defendant's conduct was somehow less than lawful.

Outside of the report to police, the only other argument made by the state was that in the days previous to the February 23, 2014 e-mail Waters repeatedly told the defendant that she did not desire to communicate with him. The state asserts that, because Waters was no longer in the defendant's employment following the custody adjudication that awarded Sullivan full custody of the defendant's children, the defendant should have known that he was to have no more contact with Waters.

We do not find merit in this argument. Despite Waters' insistence that she was no longer the defendant's employee, she did not serve the defendant with sufficient prior notice to terminate her contract. In addition, there was no evidence that the defendant's custody adjudication terminated the existing contract. From the perspective of the defendant, it is unclear how he should have been made aware of the change in their contractual relationship prior to his argument with Waters.

More importantly, Waters' desire to preclude any communication from the defendant alone is not determinative. Although it is possible that the history of the relationship between two parties may be relevant as to whether the alleged conduct is harassing, a subjective desire to not be the recipient of communication from an individual *alone* cannot support the notion that any communication from that individual is therefore harassing conduct. For example, landlords may not be arrested for merely demanding rent of tenants simply because the tenants do not want to speak to the landlord; similarly, employers may not be arrested simply for speaking to reluctant employees who have indicated that they do not wish to be contacted by their employer. To be annoying or alarming, the manner of communication must be something more than that there *was* a communication. Rather, the communication must be made in a form likely to be viewed as annoying or alarming. See *State* v. *Buhl*, 152 Conn. App. 140, 152–53, 100 A.3d 6 (evidence sufficient to support harassment conviction when defendant sent anonymous letter as opposed to alternative form of communication), cert. granted, 314 Conn. 942, 103 A.3d 164 (2014).

There has not been a single instance where this court or our Supreme Court has held that a single e-mail, sent from a contractor to a contractee, discussing noncompliance with the contract, constitutes harassing conduct. Typically, the provisions of § 53a-183 (a) have been enforced in the context of a multitude of unwanted communications; see, e.g., *State* v. *Orr*, 291 Conn. 642, 645–46, 969 A.2d 750 (2009) (defendant left multiple angry voicemails with threats to police captain); *State* v. *Hopkins*, 62 Conn. App. 665, 667, 772 A.2d 657 (2001) (victim received over 139 pages of unsolicited love letters over three years); *State* v. *Snyder*, 40 Conn. App. 544, 546, 672 A.2d 535 (defendant ordered dozens of magazine subscriptions and $5000 worth of merchandise delivered to victims), cert. denied, 237 Conn. 921, 676 A.2d 1375 (1996); or the misuse of letters or electronic devices for the purposes of fraudulent activity; see, e.g., *State* v. *Buhl*, supra, 152 Conn. App. 142, 148 (defendant utilized fake Facebook profile to expose contents of victim's diary); *State* v. *Adgers*, 101 Conn. App. 123, 125–26, 921 A.2d 122 (2007) (defendant sent letters from prison to victim of sexual assault under guise of "legal mail"); or the violation of a protective order or other form of court order. See, e.g., *State* v. *Winter*, 117 Conn. App. 493, 495–96, 979 A.2d 608 (2009) (defendant violated protective order prohibiting harassment of former girlfriend), cert. denied, 295 Conn. 922, 991 A.2d 569 (2010); *State* v. *Cummings*, supra, 46 Conn. App. 665 (same).

We therefore conclude that § 53a-183 (a) (2) is unconstitutional as applied to the defendant. In *LaFontaine*, after reaching the same conclusion, this court

"[r]emov[ed] the defendant's speech from consideration in regard to the conduct element," and then scrutinized the sufficiency of the remaining evidence. *State v. LaFontaine*, supra, 128 Conn. App. 558; see also *State v. Moulton*, 120 Conn. App. 330, 352–53, 991 A.2d 728 (2010), rev'd in part by *State v. Moulton*, supra, 310 Conn. 361. After doing so, we concluded that "the remaining evidence was insufficient to sustain a conviction under the statute." *State v. LaFontaine*, supra, 558. We come to the same conclusion in the present case.

The judgment is reversed and the case is remanded with direction to render a judgment of acquittal on the charge of harassment in the second degree and for a new trial on the charge of criminal violation of a protective order.

In this opinion the other judges concurred.

[1] General Statutes § 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when . . . (2) with intent to harass, annoy or alarm another person, he communications with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network . . . or by any other form of written communication, in a manner likely to cause annoyance or alarm . . . ."

[2] General Statutes § 53a-223 (a) provides in relevant part: "A person is guilty of criminal violation of a protective order when an order . . . has been issued against such person, and such person violates such order."

[3] This conclusion renders it unnecessary for us to consider the defendant's third and fifth claims.

[4] It is not clear from the e-mail exactly what the defendant was attempting to convey or to whom; it appeared to be related to an ongoing dispute over a hearing before the Freedom of Information Commission. Regardless, both the state and the defendant agreed that the substance of the e-mail did not contain any information relevant to Sullivan.

[5] Practice Book § 7-19 provides in relevant part: "Self-represented litigants seeking to compel the attendance of necessary witnesses in connection with the hearing of any civil matter, including matters scheduled on short calendar or special proceeding lists or for trial, shall file an application to have the clerk of the court issue subpoenas for that purpose. The clerk, after verifying the scheduling of the short calendar hearing, special proceeding or trial, shall present the application to the judge before whom the matter is scheduled for a hearing . . . [who] shall conduct an ex parte review of the application and may direct or deny the issuance of subpoenas as such judge deems warranted under the circumstances. . . ."

We note that Practice Book § 7-19 explicitly addresses civil matters, but not criminal proceedings. Because neither side has challenged its use in a criminal trial, however, we consider it implicitly applicable in this case, especially given the approval that our Supreme Court has given to court-mandated assistance of self-represented parties. See *State v. Wang*, 312 Conn. 222, 253, 92 A.3d 220 (2014).

[6] Among the ninety persons for whom the court denied issuing subpoenas as irrelevant were every member of the New Canaan Police Department not involved in the present case, the first selectman of New Canaan, multiple trial judges involved in the present case or one of his cases before the family court, the chief justice and three associate justices of our Supreme Court, the head of the state office of personnel and management, the Commissioner of Children and Families, two state senators, two state representatives, a United States senator from Connecticut, and two priests.

[7] The defendant submitted the proffer as follows:

"The Court: Susan Shultz, Darien Times Reporter.

"[Defendant]: Right. She was the person to whom the [e-mail] of June the [15th] was directed. It was not directed at Suzanne Sullivan. It was a completely inadvertent act."

[8] While testifying, the defendant, in an unusual fashion, elected to ask himself questions while standing and then sat down to answer them. The defendant testified in relevant part as follows:

"[Defendant]: So at the moment in time at roughly 8:15 on the date of June 17, 2010, was the first time that you became aware that you had sent an inadvertent email that was intended for Susan Shultz of the Darien Times; is that correct?

"Yes.

"Could you please briefly just describe how you came to know the Darien Times reporter, Susan Shultz?

"[Prosecutor]: Objection. Relevance.

"The Court: Sustained.

"[Defendant]: Did Susan Shultz write a front page article on November 18, 2009?

"[Prosecutor]: Objection. Relevance.

"The Court: Sustained."

⁹ The full e-mail sent by the defendant stated the following:

"Kat[ie],

"Please be advised you are in non-compliance with your employment agreement. You have been warned and have continued to violate the letter and the spirit of your employment agreement.

"Especially egregious are your most recent actions relating to signing an affidavit on false statements. The New Canaan Police Department will receive a report tomorrow on your unauthorized use of my credit card in December.

"Furthermore, you continue to ignore multiple requests for you to contact me about your proper accounting of withholding taxes. The failure to pay taxes subjects you to potential criminal actions. I have repeatedly asked you to confirm payments made to you by week.

"The false police report issued on Monday potentially exposes you to charges of perjury, which is a class D felony.

"The Police Department will be getting a sworn statement from me tomorrow refuting these sworn statements and I will be requesting that they investigate matters and prosecute to the fullest extent of the law.

"The further use of the credit card of mine will result in criminal charges issued for any unauthorized charges.

"You[r] agreement calls for a 45 day notice on your termination. Please refer to the signed agreement relating to paid vacation time. Any premature payments which have been received on vacation time will need to be known to avoid overpayment.

"You signed an employment agreement working for both homes. Your failure to communicate and your insulting and demeaning comments on parenting were not just inappropriate but define clearly that you don't have the best interests of the children at heart.

"The children's grades and homework related comments on their report card alone would suggest that it would be best for us to move on.

"Accordingly, your cell phone [reimbursement] and use of the car on weekends is no longer going to be fully reimbursed. The car will not be available to your personal use unless you pay for all gas expenses relating to your employment elsewhere on weekends. A log of the miles attributed to your weekend use will be deducted from your final compensation at the standard IRS miles. Please keep a log of the use of the car on the weekends. Failure to do so will result in legal actions. Any accidents related to weekend usage will be your deductible to pay.

"Every Monday you will need to send me an email relating to personal usage. Failure to do so will result in the revocation of the use of the car on the weekends.

"The car is registered to me.

"Therefore the responsibilities relating to the mileage overruns are mine to monitor and maintain.

"Thanks for your compliance."

¹⁰ The state in its closing argument stated the following:

"Whether or not Kevin Casey—and I would say that this is the only thing that seems to be disputed at all—said [the defendant would] be arrested for it or not—is of no moment. And I would submit ladies and gentlemen, it shouldn't take someone saying you're going to be arrested if you continue to do this. It should be sufficient for Ms. Waters to say leave me alone, enough. And what does he do? He goes home and either that night or the next day, sends her an e-mail . . . notwithstanding her saying enough, leave me alone, Kevin Casey saying leave her alone. And remember when he said, he being the defendant, read to me what in this email is threatening, what you find upsetting, what you find that could cause you vexation and the like. She read the whole thing.

"She's a twenty-four year old college student who is being threatened by investigation of perjury charges, felony perjury charges by this defendant after he was told don't have any contact with her. This wasn't just a hey, hello. This was a lengthy e-mail, again which the complainant indicated found the entire thing threatening and annoying."

[11] General Statutes § 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when . . . (3) with intent to harass, annoy, or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm." Any distinction between § 53a-183 (a) (2) and (3) has no bearing on our analysis.