# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MICHAEL NOWACKI,
    *Plaintiff*,

    v.                                              No. 3:16-cv-00407 (JAM)

TOWN OF NEW CANAAN, *et al*.,
    *Defendants*.

## RULING GRANTING MOTIONS TO DISMISS

In 2010, plaintiff Michael Nowacki was arrested three times by the police in the Town of New Canaan, Connecticut on criminal charges arising from conflicts that he had with his ex-wife and their childcare provider. Plaintiff exercised his right to trial on these charges, and he was ultimately exonerated as a result of acquittals on two of the charges and then a successful appeal of the remaining two charges.

Plaintiff's exoneration has now prompted him to file this lawsuit against the Town of New Canaan, ten individual officers of the New Canaan Police Department, the chairman of the New Canaan Police Commission, and the State of Connecticut. He alleges a wide range of civil rights and tort claims that stem from his arrest, prosecution, and now-vacated convictions.

For the reasons set forth below, I will grant defendants' motions to dismiss the complaint. As to the State of Connecticut, this lawsuit must be dismissed on grounds of the State's sovereign immunity from a lawsuit for money damages in federal court. As to the remaining defendants from New Canaan, plaintiff's federal claims are mostly time-barred by the statute of limitations. For those few claims that are not time-barred, qualified immunity defeats plaintiff's claims against any of the individual defendants. As to plaintiff's claim against the Town of New Canaan, plaintiff has not plausibly pleaded facts to support *Monell* liability against the Town.

1

Because there are no grounds for plaintiff's federal claims, the Court lacks federal-question jurisdiction, and I will decline to exercise supplemental jurisdiction over plaintiff's numerous state law claims. Plaintiff may consider whether to seek further relief in the state courts of Connecticut.

**BACKGROUND**

Plaintiff's second amended complaint (Doc. #94) and its attached exhibits set forth the following facts, which are accepted as true for purposes of this motion to dismiss. Many of these facts are also set forth in the state appellate court decision in plaintiff's criminal case. *See State v. Nowacki*, 155 Conn. App. 758 (2015) (attached to complaint as Doc. #95-3).

Beginning in late 2009, plaintiff and his ex-wife, Suzanne Sullivan, employed a nanny, Katelyn Waters, to provide childcare for their two children. In December 2009, plaintiff and Waters (but not Sullivan) signed an agreement detailing the terms of Waters's employment. *See* Doc. #96-12. Under the contract, Waters was provided with a leased car, paid for by plaintiff and Sullivan.

On February 21, 2010, plaintiff and Waters had a dispute about the leased car, which needed its tires replaced. Plaintiff wanted to transfer the tires from his own car (a similar model) onto the leased car, and then put new tires on his own car. Plaintiff tried to coordinate with Waters to accomplish the tire exchange. According to plaintiff, Waters refused to cooperate, despite plaintiff's attempts to coordinate with her by phone. Plaintiff then drove to the location where Waters was working at her second job. He informed Waters that she had a responsibility to maintain the leased car under the employment agreement. Because Waters still refused to cooperate, plaintiff took the leased car back to his house. At the time, he did not realize that the car contained some of Waters's personal property, including her wallet.

2

That night, Sullivan and Waters contacted the New Canaan Police Department and requested a police escort to retrieve Waters's property from the leased car. Two officers accompanied Waters and Sullivan to plaintiff's house. The officers retrieved Waters's property from the car and returned the property to Waters, who was waiting with Sullivan outside the house.

The next morning, February 22, 2010, plaintiff followed Waters, Sullivan, and plaintiff's daughter on their drive to school, in another unsuccessful effort to coordinate the tire exchange with Waters. A few hours later, plaintiff drove to Sullivan's house to return one of the cars to Waters. This prompted Waters to call the police, and defendant Kevin Casey, an New Canaan police officer, responded to the call. Officer Casey warned plaintiff not to contact Sullivan or Waters again by phone, email, or in person, or he would be arrested.[1]

Officer Casey applied for an arrest warrant in response to the events of February 22, seeking to arrest plaintiff for disorderly conduct in violation of Conn. Gen. Stat. § 53a-182 and illegal use of a motor vehicle with intent to harass or intimidate in violation of Conn. Gen. Stat. § 14-240a. Doc. #97-1 at 2–5. The arrest warrant was signed and approved by a judge of the Connecticut Superior Court. *Id.* at 2. Plaintiff was arrested pursuant to this warrant on February 24, 2010. Doc. #95-1 at 12.

In the meantime, on the evening of February 23, 2010, plaintiff had emailed Waters. In the email, he informed her that she was violating the terms of her employment agreement. He threatened legal action against her due to her violation of the agreement, and he warned her that

---

[1] During oral argument on the New Canaan defendants' motion to dismiss, plaintiff denied that Officer Casey ever issued such a warning. *See* Doc. #120 at 20 ("THE COURT: So to be clear, though . . . you're claiming that Casey never gave you that warning. MR. NOWACKI: That is correct."). Plaintiff's complaint, however, appears to concede that such a warning was issued. *See* Doc. #94 at 49, 51 (¶¶ 156, 163) (arguing that officers exceeded their lawful authority when they issued a "de facto criminal protective order" by threatening plaintiff with arrest if he communicated with Waters).

the statement she gave to police the previous day could qualify as perjury. *See* Doc. #95-1 at 4.

The next day, Waters contacted the police and submitted a written statement stating that "I

received an email from [plaintiff] threatening me" and that she had been unable to sleep because

she "was in fear of what [plaintiff] would do next." *Id*. at 5.

On the basis of this new information, the police decided to pursue a new arrest warrant.

The police submitted an application for a warrant to arrest plaintiff on a charge of harassment in

the second degree, in violation of Conn. Gen. Stat. § 53a-183(a)(2).[2] Attached to the arrest

warrant application was a copy of the email that plaintiff sent to Waters. The arrest warrant was

signed and approved by a judge of the Connecticut Superior Court. Doc. #95-1 at 1–6. Plaintiff

was arrested pursuant to this warrant on February 25, 2010.

A state court judge entered a formal protective order against plaintiff on February 24,

2010. The protective order barred plaintiff from contacting Sullivan in any manner, including by

written, electronic, or telephone contact. Docs. #97-5 at 12–13; #97-10 (modifying protective

order with respect to plaintiff's contact with his children). On June 15, 2010, plaintiff violated

the protective order when he copied Sullivan on an email that he sent expressing his views about

some kind of a dispute involving the Freedom of Information Commission. *See Nowacki*, 155

Conn. App. at 764 n.4. The email was addressed to an attorney for the Town of Darien, with "cc"

to Sullivan, as well as to the editor of the Darien Times newspaper. The email did not concern or

relate to Sullivan, although Sullivan would later testify that it was routine for plaintiff to send her

emails concerning subjects not related to her. *See id*. at 764.

---

[2] The statute provides in relevant part that: "(a) A person is guilty of harassment in the second degree when . . . (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network, as defined in section 53a-250, or by any other form of written communication, in a manner likely to cause annoyance or alarm; . . . ."

Sullivan told the police that plaintiff had contacted her, and the police again applied for an arrest warrant to charge plaintiff with criminal violation of a protective order, in violation of Conn. Gen. Stat. § 53a-223.[3] The police officer's application for the arrest warrant described the information received from Sullivan and included a copy of the email that had been sent by plaintiff to Sullivan. Doc. #95-4 at 2–3, 7.

The application further stated that "this has been an ongoing issue between Nowacki and Sullivan and this is the 8th family dispute we have investigated since 2005." *Id*. at 3. According to the application, Sullivan told the police that she had been in family court with plaintiff that day and that a judge had denied plaintiff's request for unsupervised visitation with his children on Father's Day. Sullivan said that plaintiff was "visibly agitated in court," and "[s]he further stated that his overall demeanor is becoming more aggressive and she is concerned with Father's Day approaching." *Ibid*. As with the previous warrants, this arrest warrant was approved and signed by a Connecticut Superior Court judge.

The police arrested plaintiff pursuant to the arrest warrant on June 17, 2010. According to plaintiff, he told the police upon his arrest that he had accidentally copied Sullivan on his email, when in fact he had meant to copy a different person—Susan Schultz, a reporter for a local newspaper—whose name appeared alphabetically next to Sullivan's on plaintiff's drop-down menu for email contacts. *See Nowacki*, 155 Conn. App. at 766; Doc. #95-4 at 4 ("Notice of Rights" form with plaintiff's explanation about his mistake); Doc. #95-4 at 33–34 (plaintiff's letter of complaint to the New Canaan police asserting that he was arrested on the basis of his

---

[3] The statute provides in relevant part: "(a) A person is guilty of criminal violation of a protective order when an order issued pursuant to [statute], and such person violates such order." A violation of this statute requires evidence that "defendant intended to perform the activities that constituted the violation." *State v. Opio-Oguta*, 153 Conn. App. 107, 119 (2014).

mistake in sending the email to Sullivan rather than to Schultz). Plaintiff's explanation was evidently not credited by the police.

In short, plaintiff was arrested three times in 2010. Each time, he was arrested pursuant to an arrest warrant that was supported by an affidavit of a New Canaan police officer and that was approved by a state court judge. First, he was arrested on February 24, 2010, for disorderly conduct and illegal use of a motor vehicle with intent to harass. Second, he was arrested on February 25, 2010, for harassment in the second degree. Third, he was arrested on June 17, 2010, for criminal violation of a protective order.

All four of the underlying charges were eventually consolidated in a single charging information, and plaintiff went to trial on all four charges in January 2012. The trial jury acquitted plaintiff on the charges of disorderly conduct and illegal use of a motor vehicle with intent to harass; on the other hand, the trial jury rendered guilty verdicts against plaintiff for harassment and criminal violation of a protective order. Doc. #96-3 at 4–5; *Nowacki*, 155 Conn. App. at 764.

Plaintiff was sentenced in principal part to a term of five years of incarceration, suspended after 15 months. Plaintiff served about three weeks of this sentence before being released on bond pending appeal in late May or early June 2012. Doc. #94 at 45–46.

Nearly three years later, plaintiff largely won his appeal before the Connecticut Appellate Court on March 10, 2015. As to the charge of criminal violation of a protective order, the Appellate Court initially ruled that the evidence was sufficient to support the charge. Notwithstanding plaintiff's claim that he had mistakenly sent the email to Sullivan (rather than Schultz), the Appellate Court ruled that the evidence of plaintiff's intent to send the email to Sullivan was sufficient in light of Sullivan's testimony that plaintiff often inundated her with

hundreds of emails, and because a "reasonable juror could also credit Sullivan's testimony that frequently those e-mails were about matters that had nothing to do with her and that these e-mails caused her severe distress." *Nowacki*, 155 Conn. App. at 767. Despite the Appellate Court's conclusion that the evidence was legally sufficient, the court concluded that the trial court erred when it precluded plaintiff from calling Susan Schultz as a witness and precluded plaintiff from testifying about his relationship with Schultz and the context in which he had intended to send the email to her. *Id.* at 767–77.

As to the charge of harassment, the Appellate Court ruled that the harassment statute as applied to plaintiff's case was unconstitutional in violation of the First Amendment. The court reasoned that plaintiff's conviction was impermissibly based on the content of the email that he had sent to Waters, rather than on the basis of any surrounding conduct by plaintiff. For this conclusion, the court heavily relied on what it called a "longstanding rule" that "if a prosecution of a defendant under § 53a-183(a) is based entirely on content, that application of the statute violates the first amendment and must be deemed unconstitutional as applied to that defendant's conduct." 155 Conn. App. at 782–83. The court, however, acknowledged that "our Supreme Court has modified that rule" by a decision that issued in 2013 but concluded that the rule, even as modified, still applied to plaintiff's case. *Id.* at 783–86. The court rejected the state's argument that "sending the single e-mail was sufficiently threatening when placed in the context of his and Waters' verbal altercations before the e-mail was sent." *Id.* at 786.

Accordingly, the Appellate Court ordered a judgment of acquittal on the harassment charge and a new trial on the charge of criminal violation of a protective order. *Id.* at 789. The State eventually decided to dismiss the violation-of-protective-order charge rather than to re-try

the case. On May 6, 2015, a state trial court officially entered a judgment of acquittal on the harassment charge and dismissed the violation of protective order charge. *See* Doc. #95-2.

Plaintiff filed this federal lawsuit on March 10, 2016. In his second amended complaint—now the operative complaint in this action—plaintiff alleges a wide range of federal and state claims against the State of Connecticut as well as against the Town of New Canaan, ten individual officers of the New Canaan Police Department, and the chairman of the New Canaan Police Commission (collectively referred to as "the New Canaan defendants"). The complaint runs 72 pages long with more than 200 paragraphs of allegations. It alleges federal constitutional claims under 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, and Ninth Amendments (as well as a *Monell* claim against the Town); state constitutional claims under Article First, §§ 1, 4, 7, 8, 9, and 10 of the Connecticut Constitution; state law tort claims such as false imprisonment, abuse of process, malicious prosecution, and infliction of emotional distress; and a claim for indemnification under state law against the Town of New Canaan.[4]

Plaintiff alleges that he has endured severe emotional, psychological, and financial distress as a result of being arrested, prosecuted, and convicted. In addition to spending three weeks incarcerated during 2012, he was required to liquidate substantial financial resources from his retirement account to cover his legal costs. He was prohibited from leaving Connecticut without the court's permission for five months. He was expelled from his country club after 27 years of membership. He suffered damage to his reputation, estrangement from his friends, and lost valuable time with his children. Doc. #94 at 46, 67–69.

---

[4] The second amended complaint also included a conspiracy claim under 42 U.S.C. § 1985(c), which plaintiff has since withdrawn. *See* Doc. #108-1 at 30. My listing of the claims raised by plaintiff is not necessarily exhaustive, but a more complete listing of every claim would not be consequential to the resolution of the pending motions to dismiss.

All the defendants have moved to dismiss the complaint. Docs. #106, #119. The Court has heard extensive oral arguments from plaintiff, counsel for the New Canaan defendants, and counsel for the State of Connecticut.

## DISCUSSION

The background principles governing a Rule 12(b)(6) motion to dismiss are well established. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013). Still, even a *pro se* complaint must plead enough facts—as distinct from threadbare legal conclusions—to state a plausible claim for relief. "We have noted our obligation to construe *pro se* complaints liberally, even as we examine such complaints for factual allegations sufficient to meet the plausibility requirement." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

In short, my role in reviewing the motion to dismiss is to determine whether the complaint—apart from any of its conclusory allegations and construing its *pro se* allegations liberally—sets forth sufficient facts to state a plausible claim for relief. The Court may also properly consider documents that have been referenced or appended to a plaintiff's complaint. *N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y.*, --- F.3d. ---, 2017 WL 816880, at *3 (2d Cir. 2017).

### A. Claims against the State of Connecticut

The State of Connecticut has moved to dismiss the complaint. It argues that plaintiff did not properly serve process on the State and that plaintiff's claims are barred by the Eleventh Amendment.

9

I agree with the State that the Eleventh Amendment plainly precludes plaintiff's claims against the State of Connecticut. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars an action for damages by a private plaintiff against a state unless the state has waived its immunity or unless Congress has abrogated the state's immunity. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015).

Plaintiff has made no showing that the State of Connecticut has waived its immunity for any of the types of claims that he pursues here. Moreover, "[i]t is well-established . . . that § 1983 was not intended [by Congress] to override a state's sovereign immunity," *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (citing *Quern v. Jordan*, 440 U.S. 332, 340–42 (1979)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (Congress did not override state sovereign immunity with the enactment of 42 U.S.C. § 1983, and a state is not a "person" that is subject to suit under 42 U.S.C. § 1983).

Nor do plaintiff's claims fall within the recognized exception to the Eleventh Amendment for claims against a state official that seek prospective/injunctive relief. *See Tsirelman v. Daines*, 794 F.3d 310, 313–14 (2d Cir. 2015) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Plaintiff does not seek prospective, injunctive relief (nor could he plausibly do so in light of the absence of any continuing tortious misconduct by the State or its officials). The complaint solely seeks money damages for wrongs that occurred years ago when plaintiff was repeatedly arrested in 2010 and put on trial in 2012. *See* Doc. #94 at 71–72.

10

Plaintiff asks the Court to withhold adjudication of the State's motion to dismiss while he continues to pursue a waiver of sovereign immunity from the State of Connecticut's Claims Commissioner. I am not persuaded. Under Connecticut law, "[w]henever the Claims Commissioner deems it just and equitable, the Claims Commissioner may authorize suit against the state on any claim which, in the opinion of the Claims Commissioner, presents an issue of law or fact under which the state, were it a private person, could be liable." Conn. Gen. Stat. § 4-160(a). But, as the statute otherwise makes clear, the Claims Commissioner is empowered only to authorize a lawsuit to be brought in state court, not federal court. *See Estate of A.A. v. United States*, 2016 WL 7471634, at *4 (D. Conn. 2016) (citing Conn. Gen. Stat. § 4-160(d)); *Doe v. Barrett*, 2006 WL 3741825, at *7 (D. Conn. 2006) (dismissing claim under Eleventh Amendment despite plaintiff's request for Court to withhold judgment until resolution of plaintiff's claim filed with Claims Commissioner); *see also Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (noting that "a state's consent to suit in its own courts is not a waiver of its sovereign immunity in federal court"). Because the Claims Commissioner cannot authorize plaintiff's claims to be brought in this Court, it would be pointless for me to withhold adjudication of the State's motion to dismiss pending the outcome of any proceedings before the Claims Commissioner.

Plaintiff also invokes the *Younger* abstention doctrine as grounds to abstain from adjudicating the State's motion to dismiss. *See Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* abstention doctrine "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). But "[i]n the main, federal courts are obliged to decide cases within the scope of federal jurisdiction," and

"[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013).

Here, because the Claims Commissioner does not have authority to waive the State's Eleventh Amendment immunity from a lawsuit for money damages in a federal court, it is evident that the proceedings in this Court do not challenge or call into question any ongoing state proceedings before the Claims Commissioner. The very purpose of *Younger* abstention is to respect the rights of the states. These purposes would be ill-served if the *Younger* abstention doctrine were perversely invoked to defeat a state's request that a lawsuit be dismissed for reasons of sovereign immunity.

Plaintiff also argues that, if the Court grants the State's motion to dismiss, then he will likely be time-barred by the statute of limitations from filing a later federal lawsuit in the event that he later obtains a waiver of sovereign immunity. But this reason does not warrant an indefinite extension of time for plaintiff to maintain this action against the State on the basis of a speculative possibility that the State might one day agree to waive its sovereign immunity. If the State has sovereign immunity, it is not properly subject even to the continuing burdens of remaining a party to litigation, much less the prospect of a later judgment against it. *See, e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). If plaintiff eventually secures a waiver of sovereign immunity that would allow him to file suit against the State in a federal court, then the Court at that time may consider how the statute of limitations should apply and whether it should be equitably tolled during the time that plaintiff devoted to pursuing a waiver of sovereign immunity.

In addition to arguing for dismissal on sovereign immunity grounds, the State argues that plaintiff's claims should be dismissed under Rule 12(b)(5) because plaintiff has not served the

complaint or summons on the State in accordance with Federal Rule of Civil Procedure 4(j) and
Conn. Gen. Stat. § 52-64(a). Because I find that all of plaintiff's claims against the State are
barred by the Eleventh Amendment, I need not resolve the question of whether service of process
was sufficient here.

### B. Claims against the New Canaan Defendants

The New Canaan defendants have also moved to dismiss plaintiff's claims. They contend
in relevant part that most of plaintiff's federal law claims are time-barred, that defendants are
entitled to qualified immunity for any non-time-barred claims, and that the Town of New Canaan
may not properly be subject to § 1983 *Monell* liability. I will consider each of these arguments in
turn.

### Statute of Limitations

Because plaintiff's federal constitutional claims under 42 U.S.C. § 1983 form the sole
basis for federal subject matter jurisdiction in this case, I will first address the question of
whether plaintiff's § 1983 claims are barred by the statute of limitations. A defendant may seek
dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on statute-of-limitations grounds if the limitations
defense is apparent from the allegations of the complaint or other materials properly
considered. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425–26 (2d Cir. 2008).

Congress has not prescribed a statute of limitations for constitutional causes of action
under § 1983. In the absence of guidance from Congress, the Second Circuit has instructed that
the statute of limitations must be borrowed from analogous state law limitations periods and that
the analogous state law limitations period for a § 1983 action in Connecticut is three years. *See
Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005) (citing Conn. Gen. Stat. § 52-577); *see*

*also Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("the length of the statute of limitations" for a § 1983 action "is that which the State provides for personal-injury torts").

Although state law determines the length of the statute of limitations for a § 1983 action, it is federal law that determines when the statute of limitations period begins to run. *See Wallace*, 549 U.S. at 388. Under federal law, a § 1983 claim accrues "when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994); *see also Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (stating that § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."). To the same effect, the Supreme Court has noted "the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388; *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (same).

Plaintiff filed this lawsuit on March 10, 2016. Therefore, in light of the three-year statute of limitations that governs § 1983 claims, any federal constitutional cause of action that accrued prior to March 10, 2013, is barred by the statute of limitations.

Plaintiff's constitutional claims include a claim for false arrest under the Fourth Amendment. A false arrest claim under § 1983 accrues "once the victim becomes held pursuant to [legal] process." *Wallace*, 549 U.S. at 389. Here, plaintiff's arrests were carried out pursuant to arrest warrants. Because "the issuance of an arrest warrant represents a classic example of the institution of legal process," *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008), the statute of limitations for the false arrest claims arising from plaintiff's arrests began to run upon his

arrests in February and June 2010. *See Johnson v. Teague*, 2014 WL 2515214, at *2 (D. Conn.

2014). Plaintiff's Fourth Amendment false arrest claim is barred by the statute of limitations.[5]

Plaintiff also alleges a constitutional claim for abuse of process. Similar to a claim for

false arrest, "[u]nder federal law, a claim for abuse of process accrues at such time as the

criminal process is set in motion—typically at arrest—against the plaintiff." *Hadid v. City of

New York*, 2015 WL 7734098, at *5 (E.D.N.Y. 2015); *see also Duamutef v. Morris*, 956 F. Supp.

1112, 1118 (S.D.N.Y. 1997) (Sotomayor, J.) (abuse-of-process claim accrues at time of arrest

absent lack of plaintiff's knowledge at that time of any collateral or retaliatory objective for the

wrongful initiation of process). Because more than three years elapsed between plaintiff's arrests

in 2010 and the commencement of this action in March 2016, plaintiff's claim for abuse of

process is barred by the statute of limitations for lack of any indication that the New Canaan

defendants acted against him in 2010 for collateral or retaliatory reasons not known to plaintiff

until some point within the statute of limitations period after March 10, 2013.

Plaintiff's complaint also alleges that the New Canaan defendants violated many other

constitutional rights under the Fifth and Ninth Amendments to "familial association," "life,

liberty and property," and "the non-presumption of authority." *See* Doc. #94 at 52. Because these

claims are integrally intertwined with his complaints about his arrests and detention, I doubt they

are independently actionable apart from any action that may be maintained under the Fourth

Amendment. *See Manuel v. City of Joliet, Ill.*, --- S. Ct. ---, 2017 WL 1050976, at *5 (2017)

(discussing how the Fourth Amendment is "the relevant constitutional provision to assess the

---

[5] Plaintiff does not indicate whether he was imprisoned immediately following any of his arrests in 2010
(as distinct from his claim that he was imprisoned for about three weeks in 2012 after he was convicted and
sentenced). If plaintiff was imprisoned as part-and-parcel of any of his arrests, a claim for false imprisonment would
be subject to the same legal treatment as plaintiff's claim for false arrest. *See Russo v. City of Bridgeport*, 479 F.3d
196, 204 (2d Cir. 2007).

deprivations of liberty—most notably, pretrial detention—that go hand in hand with criminal prosecutions"); *Russo v. City of Bridgeport*, 479 F.3d 196, 208–09 (2d Cir. 2007) (same).[6]

Plaintiff further claims that defendants engaged in malicious prosecution in violation of the Fourth Amendment. To prevail on a claim of malicious prosecution under § 1983, a plaintiff must demonstrate a violation of the Fourth Amendment and also the common law elements of a malicious prosecution claim under state law. *See Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (*per curiam*). In Connecticut, the elements of malicious prosecution are: "(1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice." *Ibid.* (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982)).

Because favorable termination is one of the elements that a plaintiff must allege and prove to prevail on a malicious prosecution claim, a plaintiff cannot have a complete cause of action before the prosecution has terminated in favor of the plaintiff. Accordingly, the statute of limitations for a malicious prosecution claim under § 1983 does not begin to run until criminal proceedings terminate in a plaintiff's favor. *See, e.g.*, *Manuel*, 2017 WL 1050976, at *7; *Murphy v. Lynn*, 53 F.3d 547, 548 & n. 1 (2d Cir. 1995).

In this case, plaintiff was prosecuted in state court for four different crimes. The charges of disorderly conduct and illegal use of a motor vehicle terminated in plaintiff's favor on January 24, 2012, when the jury returned a verdict of not guilty on those two charges. *See Janetka v.*

---

[6] Beyond protesting his initial arrests in 2010, plaintiff also alleges that he was unlawfully imprisoned for approximately three weeks in May 2012 after he was convicted and began serving his sentence. This post-trial imprisonment would not implicate the Fourth Amendment but instead the Fifth Amendment's Due Process Clause, *see Manuel*, 2017 WL 1050976, at *6–*7 & n.8. Regardless, because this post-trial imprisonment occurred more than three years before plaintiff filed this lawsuit, any independent claim for false or wrongful imprisonment in 2012 is likewise barred by the statute of limitations.

*Dabe*, 892 F.2d 187, 190 (2d Cir. 1989) ("an acquittal satisfies the favorable termination requirement even when there has been a conviction on a related charge, or one arising from the same incident or event"). Plaintiff did not file this lawsuit within three years of his acquittals, and therefore any malicious prosecution claim based on these two charges for disorderly conduct and illegal use of a motor vehicle is barred by the statute of limitations.

By contrast, the other two charges—harassment in the second degree and criminal violation of a protective order—did not terminate in plaintiff's favor until more than three years later, in May 2015, when these charges were dismissed following the Appellate Court's decision reversing plaintiff's convictions. As defendants themselves concede, plaintiff's action for malicious prosecution on the basis of these two charges is not barred by the statute of limitations.

For these two malicious prosecution claims, I will separately consider in the next section below whether defendants are entitled to qualified immunity. But before turning to that issue, there is one more statute of limitations question to consider: whether plaintiff's First Amendment claim is untimely.

It could be argued that plaintiff's First Amendment claim did not accrue until 2015 when the Appellate Court ruled in his favor on this claim. But I do not agree, because the Second Circuit has explicitly declined to rule that First Amendment claims that arise from the initiation of criminal process should be treated like malicious prosecution claims and subject to the favorable termination requirement. *See Smith*, 782 F.3d at 101 ("In this Circuit, First Amendment claims, even those arising out of the same series of events that give rise to Fourth Amendment claims, do not require a favorable termination in the criminal action to be cognizable as a matter of law.").

Alternatively, it could be argued that even if plaintiff's First Amendment claim was not subject to a delayed accrual, the statute of limitations was tolled for a sufficient time to make the filing of this lawsuit timely. The basis for a tolling argument would be that when plaintiff was convicted in January 2012, he could no longer have maintained his First Amendment claim because maintaining this claim would necessarily impugn his harassment conviction. In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the Supreme Court made clear that a plaintiff may not maintain a § 1983 claim for money damages if "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction," and "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. If plaintiff's First Amendment claim was deemed tolled by reason of the *Heck* rule for the interim time period from the date of his conviction in January 2012 until the date of the favorable termination of the harassment charge in May 2015, then plaintiff's filing of this lawsuit in March 2016 would be timely, because it would have occurred a few months prior to expiration of the three-year statute of limitations.[7]

The tolling issue is one that must be determined by reference to state law. *See Wallace*, 549 U.S. at 395. Still, the Supreme Court in *Wallace* was deeply skeptical about the wisdom of recognizing a *Heck*-based tolling rule, *see ibid.*, and the Second Circuit has more recently stated that the *Heck* rule does not "operate as a toll on the statute of limitations when a criminal conviction that would be impugned by a § 1983 action occurs after the accrual of the § 1983 action." *Smith*, 782 F.3d at 101 (citing *Wallace*).[8] Accordingly, although there is substantial

---

[7] The statute of limitations clock would have run for nearly two years from plaintiff's arrest in February 2010 until plaintiff's conviction in January 2012 and then, after the tolling period, it would have run again for about ten months from May 2015 to March 2016 when this lawsuit was filed.

[8] Although this quoted statement from *Smith* could be understood out of context to categorically foreclose a *Heck*-based tolling claim, to do so would overlook the Supreme Court's statement in *Wallace* that tolling is controlled by state law, not federal law (a proposition not acknowledged by the Second Circuit panel in *Smith*). The *Smith* case arose from New York, and the Second Circuit had no occasion in that case to interpret Connecticut law

18

reason to doubt that tolling is appropriate here, because the application of any tolling requirements is an issue of Connecticut state law that the parties have not briefed, I will not resolve this issue at this time, and it is unnecessary for me to do so in light of my ruling below concerning the application of qualified immunity in this case.

In sum, I conclude that the three-year statute of limitations bars most but not all of plaintiff's federal constitutional claims. As to each of the time-barred constitutional claims, plaintiff has offered no extraordinary circumstances that would warrant equitable tolling of the statute of limitations. *See Walker*, 430 F.3d at 564 (equitable tolling of § 1983 civil rights claim applies only in "rare and exceptional circumstances, where we found that extraordinary circumstances prevented a party from timely performing a required act, and that the party acted with reasonable diligence throughout the period he sought to toll").[9] The only federal constitutional claims that remain are plaintiff's claims for Fourth Amendment malicious prosecution as to the charges for harassment and criminal violation of a protective order, and plaintiff's claim for a violation of his First Amendment right to free speech by means of his arrest and prosecution on the harassment charge.

### *Qualified Immunity*

I will next consider whether defendants are entitled to qualified immunity from those of plaintiff's § 1983 claims that are not time-barred. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

concerning the tolling of statutes of limitations. In *Wallace*, although the Supreme Court rejected a *Heck*-based tolling requirement, it did so only upon concluding that it did not know of any state law tolling rule to the contrary and noting that petitioner had not argued for tolling below. *See* 549 U.S. at 394.

[9] Plaintiff urges that the "finality doctrine" requires tolling the statute of limitations on all of his claims until May 6, 2015. In support of his argument, he cites a single case, *King v. New York Tel.*, 785 F.2d 31 (2d Cir. 1986), which deals with the time limits for suing an employer for breach of a collective bargaining agreement and which is inapplicable here.

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has explained that "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 740–41 (2011)). In this manner, "[q]ualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft*, 563 U.S. at 743)).

The defense of qualified immunity is a highly deferential standard, as the Second Circuit has recently emphasized:

> When a plaintiff alleges that a law enforcement officer's official conduct renders him personally liable in damages, our inquiry is not whether the officer *should have* acted as he did. Nor is it whether a singular, hypothetical entity exemplifying the "reasonable officer"—a creature akin to the "reasonable man" of the law of torts, see Restatement (Second) of Torts § 283 cmt. c (Am. Law Inst. 1975)—*would have* acted in the same way. It is instead whether any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful.

*Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (emphasis in original).

The defense of qualified immunity may properly be raised at the pre-discovery, motion-to-dismiss stage, because "[q]ualified immunity provides government officials 'immunity from suit rather than a mere defense to liability.'" *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Indeed, "[t]he driving force behind creation of the qualified immunity doctrine [is] a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Id*. at 706.

As noted above, one of the elements of a Fourth Amendment malicious prosecution claim is that a charge was not supported by probable cause. "Under both federal and Connecticut law,

probable cause to arrest exists when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *See Zalaski v. City of Hartford*, 723 F.3d 382, 389–90 (2d Cir. 2013). Probable cause is a "fluid" standard that "does not demand hard certainties or mechanistic inquiries"; nor does it "demand that an officer's good-faith belief that a suspect has committed or is committing a crime be correct or more likely true than false." *Ibid.*

In light of the deferential qualified immunity standard, a police officer has qualified immunity from a Fourth Amendment claim for malicious prosecution if he had at least *arguable* probable cause to have initiated and maintained a prosecution. *See id*. at 390 (dismissing false arrest and malicious prosecution claims because officers had arguable probable cause). Arguable probable cause "exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Ibid.* "Put another way, an arresting officer will find protection under the defense of qualified immunity unless no reasonably competent officer could have concluded, based on the facts known at the time of arrest, that probable cause existed." *Figueroa*, 825 F.3d at 100.

Here, notwithstanding the fact that the charges against plaintiff were ultimately dismissed, it is evident to me that the New Canaan police had at least arguable probable cause to arrest plaintiff for harassment in February 2010 and then to arrest him again for criminal violation of a protective order in June 2010. The fact that plaintiff offered what he believed to be innocent explanations for his conduct did not dispel the existence of probable cause. As the Second Circuit has recently made clear, "[p]robable cause does not necessarily disappear simply

because an innocent explanation may be consistent with facts that an officer views as suspicious," and officers are "not required to accept [a suspect's] account on faith" but are "entitled to weigh [the suspect's] explanation . . . against the facts on the other side of the ledger." *Id*. at 102.

So, for example, the police still had arguable probable cause to support the arrest and prosecution of plaintiff for criminal violation of a protective order, notwithstanding plaintiff's explanation upon his arrest and defense at trial that he had not intended to send an email to Sullivan. The officers were not required to credit plaintiff's explanation in the face of information they had and stated in the arrest warrant affidavit concerning plaintiff's prior history of domestic disturbances and his recent rising aggression. Doc. #95-4 at 3. Moreover, as even the Connecticut Appellate Court agreed, the evidence at trial was legally sufficient to support the charge against plaintiff. All of this underscores that the police had at least arguable probable cause to support the arrest and prosecution of plaintiff for criminal violation of the protective order.

Moreover, plaintiff's arguments concerning probable cause overlook the fact that the officers arrested plaintiff only after satisfying a state court judge that they had probable cause for an arrest. Indeed, plaintiff has chosen to include the officers' arrest warrant affidavits as exhibits to his own complaint, and he has not pointed to any material false statements or omissions in these affidavits. In such circumstances, where an officer has obtained an arrest warrant in reliance on a judge's probable cause determination, there is no basis to conclude that the officer did not have at least arguable probable cause or that the officer did not act objectively reasonably and should be liable for money damages. *See, e.g.*, *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (noting in part that "[n]ormally, the issuance of a warrant by a neutral

magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause"). *See also Messerschmidt v. Millender*, 565 U.S. 535, 546–48 (where warrant is issued by neutral magistrate, officer is immune from liability unless "no reasonably competent officer would have concluded that a warrant should issue" (citing *United States v. Leon*, 468 U.S. 897, 922–23 (1984))).

For the same reasons, the New Canaan defendants are entitled to qualified immunity from plaintiff's First Amendment claim (even assuming it to be timely). The officers applied for an arrest warrant, and they attached a copy of the email that plaintiff sent to Waters to the arrest warrant affidavit. Notwithstanding that the Connecticut Appellate Court would conclude more than five years later that the First Amendment foreclosed the prosecution on the basis of the content of the email, it was not objectively unreasonable for the officers to believe at the time that there was probable cause and a lawful basis to arrest and prosecute plaintiff for harassment, in light of not only the email but also in light of the statement they had from Waters attesting to her fear of threat from plaintiff.

Indeed, the Connecticut Appellate Court's decision in plaintiff's case principally relied on a prior decision, *State v. LaFontaine*, 128 Conn. App. 546 (2011), that was not decided until the year after plaintiff's arrest in this case. The harassment statute had not been declared facially invalid under the First Amendment at the time that plaintiff was arrested, and plaintiff ultimately prevailed on appeal only by means of mounting a highly fact-specific, as-applied challenge to his prosecution and in the face of substantial arguments by the state that the prosecution was not impermissibly based on the content of plaintiff's email.

I cannot conclude that any objectively reasonable law enforcement officer should have known at the time of plaintiff's arrest that a prosecution of plaintiff for harassment would amount to a violation of the First Amendment. Especially where police officers have sought a judge's approval for an arrest warrant and have not misled the judge about the facts relied upon for an arrest and prosecution, the qualified immunity doctrine does not expose local police officers to lawsuits for money damages because they are not omniscient or because they do not have a sophisticated or clairvoyant understanding of how appellate judges might one day apply evolving and contestable principles of free speech under the First Amendment.

In sum, I conclude that qualified immunity warrants dismissal of plaintiff's claims against all of the individual New Canaan defendants. The police had at least arguable probable cause, and it was not objectively unreasonable for the police to rely upon the determinations of a state court judge who approved the arrest warrants. Accordingly, I will dismiss plaintiff's Fourth Amendment malicious prosecution claims and his First Amendment free speech claim as to each of the individual defendants.

### Monell Claim

Plaintiff also alleges a *Monell* claim of municipal liability under § 1983 against the Town of New Canaan. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). It is well established that a municipality cannot be held liable pursuant to § 1983 under a theory of *respondeat superior*. *Id.* at 690–94. Instead, in order to hold a municipality liable under § 1983, a plaintiff must establish that the municipality had a policy, custom, or practice that was intended to violate or that was deliberately indifferent to constitutional rights, and that this policy, custom, or practice actually caused the violation by municipal actors of plaintiff's constitutional rights. *See, e.g.*, *Connick v. Thompson*, 563 US. 51, 60–61 (2011); *Jones v. Town of East Haven*, 691 F.3d

24

72 (2d Cir. 2012). The entitlement of individual defendants to qualified immunity does not preclude *Monell* liability against the Town. *See Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008) ("[A] municipality is liable for even its good faith constitutional violations presuming that the municipality has a policy that causes those violations.").

Plaintiff's complaint alleges that the Town of New Canaan "had in effect established de facto policies, practices and customs exhibiting deliberate indifference to the constitutional rights of citizens of the Town of New Canaan which were a direct and proximate cause of the unconstitutional conduct of the Defendants . . . resulting in the false arrest, abuse of process and malicious prosecution of the Plaintiff." Doc. #94 at 48. The complaint alleges that "these de facto policies, practices, and custom[s]" included the municipality's failure to supervise, train, and discipline its officers; the municipality's failure to enforce the police department's policy manual and code of conduct; and the "police code of silence when police officers regularly cover-up unlawful conduct." *Id.* at 57–58.

Even assuming a violation of plaintiff's constitutional rights, plaintiff has clearly failed to state a *Monell* claim, because plaintiff has not pled any specific facts (as opposed to legal conclusions) to point to any specific municipal policy or custom, to suggest that the municipality acted in deliberate indifference to constitutional rights, or to allow an inference that any policy or custom caused any of the alleged violations of plaintiff's constitutional rights. *See, e.g.*, *Sherman v. Platosh*, 2016 WL 146431, at *3 (D. Conn. 2016) ("[T]o survive a motion to dismiss, Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."); *Rogoz v. City of Hartford*, 2012 WL 4372189, at *5 (D. Conn. 2012) (dismissing *Monell* claim where "[p]laintiff alleges only vaguely that certain

policies, practices or customs exist—giving rise to an inference of deliberate indifference—but fails to plead any facts in support of their actual existence.").

In response to defendants' argument that the complaint fails to assert any facts in support of the *Monell* claim, plaintiff points to the existence of a "Policy Manual" and a "Procedures Manual" and argues that the existence of these documents somehow supports his *Monell* claim. Doc. #108-1 at 24. Plaintiff then asserts that the New Canaan Police Department had a custom of threatening citizens for exercising their First Amendment rights but offers no facts to support that claim besides the fact of his own arrest. This single alleged violation of plaintiff's own rights does not by itself establish the existence of a municipal policy or custom. *See, e.g.*, *Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 538 (S.D.N.Y. 2012) (dismissing *Monell* claim where the only supporting facts relate to plaintiff's own arrest); *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) ("[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State."). In short, plaintiff does not allege sufficient facts in support of the *Monell* claim to meet the standard of facial plausibility required on a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

### State Law Claims

Plaintiff's only remaining claims are state law claims. "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.C.*, 464 F.3d 255, 262 (2d Cir. 2006). Accordingly, having concluded that plaintiff's federal claims must be dismissed, I will decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). This ruling is

without prejudice to plaintiff's right to seek any lawful and appropriate relief in the Connecticut state courts.

### *Dismissal with Prejudice*

I will grant dismissal with prejudice, because plaintiff has twice amended his complaint, and I have nothing to indicate that any more amendments would not be futile. "Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 62 (2d Cir. 2016). As I have explained above, plaintiff's federal claims against the State of Connecticut are plainly barred by the Eleventh Amendment, and his federal claims against the New Canaan individual defendants are either time-barred or barred by qualified immunity. His *Monell* claim against the Town of New Canaan is wholly conclusory, and plaintiff has not alleged any facts that might plausibly show that his arrests and prosecutions were somehow caused by a town policy. Because I believe that amendment would be futile in addressing these barriers to proceeding in federal court, I will not allow leave to file a third amended complaint.

### CONCLUSION

I regret that plaintiff was subject in state court to criminal prosecution on charges for which he was either acquitted or that did not stand up on appeal. I can understand why plaintiff is upset and has sought legal recourse. But the federal courts are courts of limited jurisdiction, and the question now before me is not whether plaintiff should have been charged and prosecuted in the first place. The question is whether plaintiff is entitled to recover money damages in a federal court against those he asserts are responsible. I conclude in light of well-established law that the answer to that question is no.

For the reasons stated above, the New Canaan defendants' motion to dismiss (Doc. #106) and the State of Connecticut's motion to dismiss (Doc. #119) are GRANTED. The complaint is dismissed with prejudice in its entirety. The Clerk of Court shall enter judgment for defendants State of Connecticut, Town of New Canaan, Kevin Casey, James Cole, William Ferri, Joseph Farenga, Louis Gannon, Christian Gray, Daniel Gulino, Leon Krolikowski, Edward Nadriczny, Thomas Swindon, and Jason Kim, and close this case.

It is so ordered.

Dated at New Haven this 28th day of March 2017.

/s/ *Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge